# Grant *v.* The State.

## Indictment for Larceny.

1. *Sufficiency of indictment ; clerical and grammatical mistakes.*—The omission of the last letter of the word *gold*, in describing the money alleged to have been stolen, is a mere clerical or grammatical misprision, which does not vitiate the indictment.

2. *Same ; averment of value of stolen articles.*—In an indictment for the larceny of several distinct articles, an averment of their aggregate value is sufficient on demurrer, though the better practice is to aver the separate value of each.

3. *Same; description of money.*—"Ten twenty-dollar gold pieces of American coinage, ninety dollars in silver coin, the description of which is to the grand jury unknown, three hundred and twenty dollars in national currency of the United States, the description and denomination of which is to the grand jury unknown, of the value of six hundred dollars, the personal property of G. P. W."—held a sufficient description of each kind of money, in an indictment for the larceny.

4. *Admissibility of confessions.*—Where the sheriff, on arresting the defendant, said to him, "I am sorry to inform you that you are my prisoner," and, being asked "what for," replied, "For stealing George Waite's money;" whereupon the prisoner said, "I am sorry I stole it ;" and the officer testified that no threats or promises were used to induce the confession,—*held*, that the confession was voluntary, and properly admitted.

5. *Possession of other stolen articles, not named in indictment.*—The fact that a bank-note belonging to the prosecutor, which is not described in the indictment as one of the stolen articles, but which was stolen at the same time and place with them, is found in the prisoner's possession at the time of his arrest, is relevant and admissible evidence against him.

6. *Proof of value of stolen money.*—The value of American gold and silver coin, and of "national currency" notes, being fixed by law, no proof of their value is necessary to sustain a conviction for their larceny.

[Grant v. The State.]

7. *Charge as to identifying stolen money, and explaining possession.*—Where there is evidence tending to show that the prisoner had exchanged a part of the stolen money for other money, which was found in his possession when arrested, a charge requested, which asserts that, unless it is shown that the money found in his possession "was the identical money alleged to have been stolen, it is not incumbent on him to explain his possession," is properly refused.

FROM the Circuit Court of Coosa.

Tried before the Hon. JOHN HENDERSON.

The indictment in this case contained only a single count, which charged that the defendant " feloniously took and carried away ten twenty-dollar *gol* pieces of American coinage, ninety dollars in silver coin, the description of which is to the grand jury unknown, three hundred and twenty dollars in national currency of the United States, the description of which (?) the denomination of which is to the grand jury unknown, of the value of six hundred dollars, the personal property of George P. Waite ; against the peace," &c. The defendant demurred to the indictment, on the ground that it did not describe the stolen articles with sufficient definiteness and precision, and did not contain a sufficient averment of their value. The court overruled the demurrer, and the defendant then pleaded not guilty ; and on his trial he reserved the following bill of exceptions to other rulings of the court :

" The State introduced George P. Waite as a witness, who testified, in answer to questions by the prosecuting attorney, that he lives in said county of Coosa, in a double log-house, he and his wife occupying one end of the house, and his father and mother the other end ; that he kept his money and valuable papers in a small trunk, which was kept under the bed in which his father and mother slept in their room, and was kept locked ; that this trunk was taken out of the house, some time between the middle of the afternoon on Friday, December 31, 1875, and eight o'clock at night on Saturday, January 1, 1876, but he could not tell at what precise time ; that the defendant knew he kept his money in said trunk, and that the defendant and two others stayed all night at his house on said Friday night. The witness was then asked by the prosecuting attorney, if he had any money in his trunk at the time it was taken, to state what kind of money, and how much ; to which he replied—1st, that there was ' two hundred dollars in American gold coin, ten twenty-dollar gold pieces.' The defendant objected to this evidence, on the ground that it was irrelevant, incompetent, and variant from the charge in the indictment. The court overruled the objection, and the defendant excepted. The witness stated, also, that he had in the trunk seventy-five or eighty dollars in silver coin, six or seven dollars of which

were Mexican dollars, and the balance American coin, mostly half-dollars. The defendant objected to this evidence, on the ground that it was illegal and incompetent; the court over-ruled his objection, and he excepted. The witness further stated, that he had in said trunk about three hundred and thirty-five or forty dollars in paper currency of the United States, commonly called 'greenbacks;' to which evidence, also, the defendant objected, on the same grounds as above stated; but the court overruled his objection, and he excepted.

"The witness was then asked by the prosecuting attorney, if he had any other money in said trunk at the time it was taken, than that already described by him; to which question the defendant objected, as illegal and irrelevant. The solicitor then stated to the court, that he would make it legal; that he expected and proposed to prove, by said witness, that a bank-bill of a particular description, not described in the indictment, was in the trunk with his other money, and that this identical bill was found in the defendant's posses-sion when he was arrested. The court thereupon overruled the defendant's said objection, and he excepted. The wit-ness then stated, that he had in said trunk an old five-dollar note or bill on the Farmers' Exchange Bank of South Caro-lina; that the defendant was arrested at his own house, late at night, and was kept and guarded there the remainder of the night, being hand-cuffed; that on the next morning wit-ness saw him lie down across the bed, and pull the cover over him, and noticed that he had his pocket-book out, and seemed to be handling some papers, or something taken out of the pocket-book; that he called the attention of the sheriff to him, and the sheriff went up to him, and took something out of his hand, which proved to be a bill of money wadded up, and opened it, and handed it to him (witness), and he re-cognized it as the said bill that was in his trunk when it was taken." (The bill was then produced, and identified by the witness.) "The defendant renewed his motion to exclude said bill from the jury, because there was no such bill or money described in the indictment, and it was illegal and irrelevant; but the court overruled his objection and motion, and he ex-cepted. When the sheriff took said bill from the defendant, and opened it, he handed it to witness, and remarked to him, 'George, here is a bill I suppose you can swear to;' to which witness answered, 'Yes.' The defendant objected to this conversation going to the jury, and excepted to the rul-ing of the court allowing it against his objection.

"The witness was asked by the prosecuting attorney, if he ever heard the defendant make any confessions about having

stolen said money, or any statements about it; to which question the defendant objected, because, if any confessions or statements about the matter were made, it was not shown that they were voluntary. Being then interrogated by the defendant's counsel, the witness stated, that the defendant was arrested near midnight, at his house in St. Clair county, and was hand-cuffed by the sheriff not long after his arrest; that he (witness) and two other persons were with the sheriff at the time of the arrest; that they started the next morning to Coosa county, by way of Talladega; that he remarked to the defendant, some time during the day, that if he was guilty of stealing his (witness') money, he (witness) thought it would be best for him to confess it, and throw himself on the mercy of the court; that he did not know of any inducements held out to the defendant to induce him to confess, and did not know of any threats made by any one to induce him to confess; and that he was with the defendant from the time he was arrested. The court thereupon overruled the defendant's objections, and he excepted. The witness then stated, that the sheriff, when he arrested the defendant, said to him, ' I am sorry to inform you that you are my prisoner;' that the prisoner asked, 'What for, Joe;' that the sheriff replied, 'For stealing George Waite's money;' and that the defendant then said, 'I am sorry I stole it.' In conversation with the defendant the next day, on their way to Talladega, the defendant stated, as said witness further testified, that he had sold two hundred dollars in gold in Talladega; that it might have been witness' money, but, if it was, he did not know it; that he got it from two negroes, named ———— and ————; that he never saw the negroes before, and did not know them. Witness further stated, that on the night of the defendant's arrest, and not long after his arrest, he got out of a box in his house about one hundred and twenty-six dollars in American silver coin; that he could not identify it, or any of it, as the money he had lost; but that the lost money corresponded with the description of the money so found, though there was more of it than the silver he had lost. The defendant admitted, that he had paid out several sums of money, as follows, after he had moved from Coosa, in January, 1876, and before his arrest, sixty dollars for corn, fifty dollars for land, and other sums for provisions, household and kitchen furniture.

"Joseph E. Pond, a witness for the State, testified that he, as the sheriff of Coosa county, arrested the defendant in St. Clair county, in February or March last; that the arrest was made in the night, at the defendant's home; that he (witness) got out of a box in the house, soon after the arrest,

one hundred and twenty-six dollars in American silver coin, mostly half-dollars, which he took charge of, and brought it back to Coosa county. The witness was then asked, if the defendant made any confessions or statements about stealing Waite's money, to state what he said; to which question the defendant objected, because, if any confessions or statements were made, it was not shown that they were voluntary. The witness was then asked, if any threats, promises, or inducements were held out to the defendant, to influence him to make the confessions or statements; and replied, that he did not know of any. Thereupon, the court overruled the defendant's objection, and he excepted. The witness then testified, that he. said to the defendant, when he arrested him, 'I am sorry to inform you that you are my prisoner;' that the defendant asked, 'What for;' that he replied, 'For stealing George Waite's money;' and that the defendant then said, 'I am sorry I did it.' Not long after his arrest, in his own house, he got a sack of silver out of a box, containing one hundred and twenty-six dollars of American silver coin; and said that he exchanged gold for it, and that Waite might have it if he would swear to it. On the way from St. Clair to Coosa county, defendant stated to witness, that he had sold or exchanged two hundred dollars in gold in Talladega for silver; that it might have been Waite's money, but, if it was, he did not take it; that he got it from two negroes, named ——. Witness identified the five-dollar note on the Farmers' Exchange Bank, as the one which he had taken out of the defendant's hand, when he was lying across the bed, on the morning after his arrest; and on this evidence said bill was offered in evidence, and was admitted by the court, against the defendant; to which he excepted. Another witness for the State testified, that about the 6th January, 1876, the defendant showed him two sacks of silver and a sack of gold, and stated that there was about seventy-five or eighty dollars of the silver, and two hundred and twenty dollars in gold. There was evidence, also, tending to show that the defendant was a poor man, and had lately been engaged in teaching a public school in Coosa county; that he had been lately married, and moved to St. Clair county soon after the 6th January, 1876. The defendant proved a good character up to the time this charge was brought against him; and there was evidence tending to show that, before it was alleged the larceny was committed, he had in his possession a five-dollar note of the Farmers' Exchange Bank of Charleston, South Carolina.

"The defendant requested the following charges to the jury, which were in writing : 1. 'That it is the duty of the

[Grant v. The State.]

State to prove to the satisfaction of the jury, beyond all reasonable doubt, the value of the money alleged to have been stolen; and if the State has failed in making such proof, the defendant must be acquitted.' 2. 'That unless the evidence in the case shows, beyond a reasonable doubt, that the money said to have been found in the defendant's possession, soon after the larceny is said to have been committed, was the identical money said to have been in the trunk of George B. Waite, then it is not incumbent on the defendant to explain his possession of the money which he had.' The court refused these charges, and the defendant excepted to their refusal."

S. J. DARBY, for the defendant.—1. The demurrer to the indictment ought to have been sustained, for the reasons specifically assigned. The omission of the letter *d* from the word *gold* is a fatal mistake, and brings the case within the principle decided in the case of *Wood v. The State*, 50 Ala. 144. The articles alleged to have been stolen are not described with that degree of definiteness and precision which the law requires in such indictments, and there is no sufficient averment of their respective values.—*The State v. Lea*, 3 Stew. 123; 1 Porter, 116; 8 Porter, 447; *Sheppard v. The State*, 42 Ala. 531; Wharton's Amer. Crim. Law, 130-32; 1 Bishop's Crim. Pro. § 294; 2 *Ib.* § 676.

2. The evidence in reference to the note on the South Carolina bank was wholly irrelevant, and should not have been allowed to go to the jury.—1 Greenl. Ev. §§ 51, 51 *a*, 52; *Plunket v. The State*, 2 Stewart, 11.

3. The confessions were not affirmatively shown to be voluntary.—1 Greenl. Ev. §§ 219, 220; *Newman v. The State*, 49 Ala. 9; *Mose v. The State*, 36 Ala. 211.

4. The conversation between the sheriff and Waite, as to the bank-note, was not competent evidence against the defendant. He had no connection with it, and was not required to answer it.—1 Greenl. Ev. § 199; *Fuller v. Dean*, 31 Ala. 654; *Lawson v. The State*, 20 Ala. 65; *Bob v. The State*, 32 Ala. 560.

5. The first charge asked ought to have been given.— 3 Greenl. Ev. § 153; Wharton's Amer. Crim. Law, 571.

6. A man is never called on to explain his possession of property, until it is shown to be stolen property. The second charge asked ought, therefore, to have been given.

JNO. W. A. SANFORD, Attorney-General, for the State.— 1. Clerical errors and grammatical mistakes do not vitiate an indictment. If *gol* cannot be understood to mean gold, it

[Grant v. The State.]

may be rejected as surplusage, and the indictment still remain good and sufficient.—*Wood v. The State*, 50 Ala. 145; *Reeves v. The State*, 20 Ala. 33. The other averments, descriptive of the money, and as to its value, are clearly sufficient.—*Oliver v. The State*, 37 Ala. 134; 1 Bishop's Cr. Pro. §§ 268 *et seq.*

2. The confessions were proved to be entirely voluntary, within the rule established by repeated decisions of this court.—*Mose v. The State*, 36 Ala. 211.

3. The defendant's possession of the South Carolina bank bill was one fact in the train of circumstances adduced against him, tending to show his guilt. Its weight as evidence was a question for the jury.

4. The charges asked were properly refused. No proof of the value of the stolen notes was necessary, since their value is fixed by law, and it must be judicially known to the court. The second charge asserted an incorrect legal proposition, and ignored a material part of the evidence.

BRICKELL, C. J.—Neither clerical nor grammatical errors vitiate an indictment, unless they change the words, or obscure the sense. It is simply impossible to read this indictment, and be in doubt as to the words intended, or their import. The omission of the letter *d* from the word *gold,* converting it into *gol*, is a mere clerical error, or bad spelling, on the part of the pleader. The sense is not obscured—it is the same as if the letter had been inserted; and in reading, many persons would not observe the omission, and those who did would involuntarily cure it in pronunciation. The defendant, on an inspection of the indictment, or on hearing it read, would know that it was intended to charge him with larceny of *ten twenty-dollar gold pieces of American coinage*, and the court would with certainty understand that such was the accusation. The case of *Wood v. The State*, 50 Ala. 144, is of doubtful propriety; but, conceding its correctness, it is distinguishable from this case. The omission of the letter *l* from the word *malice*, in that case, converted it into a word incapable of a like sound. The difference in the sound of the word *gol*, as written in the indictment, and the true word *gold*, is too imperceptible to be made the ground of objection.—*Edmundson v. State*, 17 Ala. 179. Before an objection because of false grammar, incorrect spelling, or mere clerical errors, is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt as to the meaning a person of common understanding, reading, not for the purpose of finding defects, but to ascertain what is intended to be charged.—1 Bish. Cr. Pro. §§ 354, 357.

[Grant v. The State.]

2. The indictment for larceny must aver the value of the thing stolen.— *Wilson v. State*, 1 Porter, 118; *Sheppard v. State*, 42 Ala. 531. When, as in the present case, the larceny charged is of several distinct things, an averment of the collective value is sufficient, without a separate averment of the value of each. It is obviously, however, the safer and better practice to aver the value of each thing; for, if the jury do not find a general verdict of the entire charge, but a verdict of guilty of stealing one or more of the things, not specially assessing the value, difficulties in pronouncing judgment would arise.—2 Bish. Cr. Pr. § 714.

3. The indictment must, also, state the kind and description of the goods stolen. If the larceny is of coin, the number and denomination must be stated.—*Murphy v. State*, 6 Ala. 845; *State v. Longbottoms,* 11 Humph. 39. The usual mode of averment is to state the species of coin by its appropriate name, and that it is " of the current gold or silver coin of the realm." The purpose of the averment is to identify the things stolen; and the averment of the denomination of the coin, and that it is of the *American coinage*, is sufficient for purposes of identification. That it is the current coin of the realm, is then matter of judicial inference, which no averment is necessary to support. The indictment describes sufficiently the gold coin.

When the species and denomination of the coin are unknown to the grand jury, the fact may be averred, and a general description, as so many dollars in gold, or in silver coin, will be sufficient.—*People v. Bozart*, 36 Cal. 244; *Commonwealth v. Sawtelle*, 11 Cush. 142; *Chisolm v. State*, 45 Ala. 66; *DuBois v. State*, 50 Ala. 139. As to the silver coin, the indictment is, therefore, sufficient.

If the larceny charged is of bills, or bank-notes, intended to circulate as money, such bills or notes may be described in a general manner, and it is not necessary to set them out *verbatim*.—2 East, § 159. It is sufficient to describe them by their number, denomination, and value.—*State v. Williams*, 19 Ala. 15. In *Sallie v. State*, 39 Ala. 691, an indictment describing the things stolen, as " one ten-dollar treasury-note of the United States, usually called a greenback, and one ten dollar national-bank-bill, usually called a greenback," was sustained. In each of these cases, the averment was, that the thing stolen was a bill or note, and the particular species of property was stated.

In *DuBois v. State*, 50 Ala. 139, the description was, " one pocket-book, containing fifty dollars in national currency of the United States, the exact denomination of which is to the grand jury unknown;" and it was declared sufficient. The

[Grant v. The State.]

court say : " It " (the indictment) " describes with sufficient certainty and precision the felonious taking of the property stolen from the person of the owner, and the articles themselves, and their value." The attention of the court does not seem to have been drawn to the fact that the particular kind of currency, whether of coin, or of paper, was not averred.

In *Crocker v. State*, 47 Ala. 53, the description was, " ten dollars in money of the United States currency," and it was pronounced insufficient. The court say, " The pleader might just as well have said ten dollars in personal property, without setting out the particular kind of personal property meant." This case is distinguishable from that of *DuBois*, only by the fact that, in the latter case, there was the additional designation, *national currency*. Do these words import a particular species of money, or of currency circulating as money ? We incline to the opinion that such is their import. The acts of congress indicate that the issue of the National Banks is to be designated as " national currency." The office of comptroller of the currency is established, and charged with the execution of all laws passed by congress relating to the issue and regulation of a *national currency* secured by United States bonds.—R. S. 53, § 324. The form of the notes of National Banks, the statements they must bear, are prescribed; and it is further provided, they may bear such devices, and other statements, as the secretary of the treasury shall by regulation direct.—R. S. 1007, § 5172. The notes of these banks bear on their face the designation, " national currency." In popular acceptation, probably, the " national currency " embraces alike treasury-notes, and the issue of national banks. Whether we adopt the popular acceptation, or the meaning of the term as it is to be extracted from the acts of congress, it designates notes or bills circulating by authority of the general government as money ; and the description in the indictment, " three hundred and twenty dollars in national currency," describes the kind or species of currency, and is sufficient. The averment that the particular denomination was unknown to the grand jury, dispensed with the necessity of a statement of the number or denomination of the notes.—*Commonwealth v. Grimes*, 10 Gray, 470. Informal and inartificial as the indictment may be, for which there is neither apology nor excuse, we can not pronounce it insufficient.

4. The facts and circumstances, under which the accused made the declarations or confessions introduced in evidence against him, were before the court, indicating clearly that they were voluntary—made without the appliance of hope or

(15)

fear by any other person; and of their admissibility there can be no doubt.—*Mose v. State,* 36 Ala. 211; *King v. State,* 40 Ala. 314.

5. When goods are stolen, and the whole or a part of them are found concealed on a person, or in his possession, it is certainly a fact to be submitted to the jury. The bank-note was taken at the same time, from the same place, with the things described in the indictment as stolen. True, it is not mentioned in the indictment as one of the things stolen; but that does not affect the admissibility of the evidence. It was one of the fruits of a single crime, and the evidence was referrible to the issue the jury were to try.

6. The court correctly refused the instructions requested by the defendant. They are so framed, that, if given, they could have had no other tendency than to mislead and confuse the jury. It certainly was not necessary for the State to prove the value of ten twenty-dollar pieces of American gold coin, or of ninety dollars in silver coin, the value of which is fixed by law, as is the value of three hundred and twenty dollars of national currency.

7. There was evidence tending to show that the defendant had exchanged parts of the money stolen, for some of the money found in his possession. This evidence the second charge requested ignores; and if it had been given, would have had a tendency to divert from this evidence entirely the attention of the jury. Beside, the charge would have relieved the defendant from offering any explanation of his possession of the Farmer's Exchange Bank note, which was identified, because the other money found in his possession was not identified as part of the money stolen.

We find no error in the record, and the judgment must be affirmed.