# James v. The State.

## Murder.

Decided June 6, 1916.   72 South. 299.)

1. **Jurors; Competency; Homicide.**—Where a juror declares on his voir dire examination that he is opposed to capital and penitentiary punishment, the court can properly excuse him from further service on its own motion, the charge being homicide.

2. **Trial; Objections to Evidence; Time.**—Where no objections were made to the admission of testimony, and the motion to exclude the testimony is not made until after the cross examination, such motion comes too late.

3. **Homicide; Evidence.**—Where it was not disputed that defendant struck deceased with a pistol, the admission of testimony that deceased was shot with a pistol, is not prejudicial.

4. **Same; Flight.**—Evidence that when defendant saw an officer coming to arrest him, he ran into a house, was admissible, and where such officer testified to defendant's flight, it was not prejudicial to permit him to be asked whether defendant knew he came to arrest him, where the officer answered that he did not know.

5. **Same; Res Gestae.**—Where defendant claimed that he fired the shot in self defense, it was proper to permit him to show his movements, appearance and fright, as of the time of the offense, as pertinent to his imminent peril, or his belief thereof when he fired the shot.

[James v. The State.]

6. **Same; Witnesses; Examination.**—While it would be proper on cross examination, as a test of credibility or knowledge, to ask a witness how he knew defendant was frightened at the time he fired the shot, it was not proper to ask such question on the direct examination.

7. **Same; Leading Question.**—The question whether witness heard defendant's wife say: "Run, run, they are shooting at us," they have a pistol," was properly refused as leading.

8. **Homicide; Evidence; Res Gestae.**—The defendant was not entitled to show as part of the res gestae of the killing that he asked a witness to permit him to sleep with witness that night.

9. **Same.**—Where defendant's evidence tended to show that deceased and others acted by preconcert in attempting to secure a pistol from the accused, in the doing of which deceased was shot, evidence of a prior conversation between deceased and another to the same effect was admissible.

10. **Evidnce; Good Character.**—While the evidence of general good character of defendant is admissible, such character cannot be shown by specific facts, such as that defendant was employed in a position of trust.

11. **Same.**—Where it appears that evidence of good character is based on a specific act or fact, it is properly excluded, and if it later appears that such witness could testify from general reputation, such fact should be brought out by a further examination and offer of evidence.

12. **Evidence; Immaterial.**—The fact that defendant asked the witness to call the sheriff for him, was immaterial and properly excluded.

13. **Same; Admissions.**—Where a witness stated that neither he nor anyone else in his presence threatened defendant, or offered him any inducement or reward to get him to talk, statements of defendant to the witness relative to the crime, was properly admitted.

14. **Trial; Argument of Counsel.**—A prosecuting officer may properly argue that if defendant was guilty, he ought to be convicted, and that it is dangerous to society to acquit a guilty man.

15. **Homicide; Degree; Jury Question.**—Where the indictment charged murder in the first degree, and defendant set up self-defense, and introduced evidence on that issue, the question of his guilt, and the degree thereof is for the jury.

16. **Same.**—In such a case it is error for the court to withdraw from the jury the consideration of murder in the second degree and manslaughter in the first degree.

17. **Same.**—It is error in such case to charge that defendant must be acquitted unless the state proves beyond a reasonable doubt either first degree murder, murder in the second degree, or manslaughter in the first degree.

18. **Same; Instructions.**—It is invasive of the province of the jury to charge that certain character testimony is not improper, and that there was no evidence that a certain witness was interested.

19. **Same.**—An indictment charging murder in the first degree embraces all the degrees of homicide, and the jury should not be instructed to find the intent to kill, or acquit.

20. **Same; Self Defense.**—A charge asserting that there was no evidence that defendant was at fault in bringing on the difficulty, is properly refused

as invasive of the province of the jury, and as omitting other elements of self defense.

21. **Same.**—A defendant must be wholly free from fault as an essential element to his defense of self defense.

APPEAL from Washington Circuit Court.

Heard before Hon. A. H. ALSTON.

Jerry James was convicted of murder in the second degree, and he appeals. Reversed and remanded.

Jerry Hopkins was called as a juror and asked, "Are you opposed to capital and penitentiary punishment?" He answered, "Yes, sir." He was then asked, "You don't believe a man should be sent to the penitentiary or hung for anything?" and he answered, "No, sir."

The witness Curtis stated on cross-examination: "I looked at the place and saw the sign where he was shot with a pistol. I did not see the bullet, but just judged from the sign that it was a pistol. I can tell the difference between a pistol and a rifle hole, and just can't tell positively, but I think it was."

The defendant moved to exclude from the jury the fact that Henry Curtis, the deceased, was killed by a pistol bullet. The other objections and exceptions to evidence sufficiently appear.

The witness Streeter stated that he had a conversation with Jerry James in May on the train from Wagar about the death of Henry Curtis, and he was asked, "Did you offer him any reward or inducement to get him to talk to you?" and he answered:

"No, sir; no one in my presence offered him any reward at the time he made the statement. I did not threaten him or make him any promises to get him to talk to me."

Whereupon, he was permitted to detail the conversation.

The following objections were interposed to portions of the argument of the state's counsel: "It is an awful thing to turn a guilty man loose. It hurts society so," etc.

The following charges were refused to defendant:

(2) If you believe the evidence in this case, beyond a reasonable doubt, you cannot find the defendant guilty of murder in the second degree.

(3) Same as 2 as to manslaughter in the first degree.

(4) The burden rests on the state of Alabama to show beyond a reasonable doubt that defendant is guilty of either murder in the first degree, murder in the second degree, or manslaughter in the first degree, or you must acquit defendant.

(5) There is nothing improper in the witness J. T. Jones testifying to the bad reputation of the witness Town Townsend.

(6) There is no evidence before you that witness James Wasp is an interested witness in this case.

(7) If you believe the evidence in this case beyond a reasonable doubt, you cannot find defendant guilty of murder in the first degree.

(8) The burden rests on the state to show by the evidence beyond a reasonable doubt that the intent to kill existed in the mind of defendant at the time decedent was killed, before you can find defendant guitly as charged in the indictment.

(9) There is no evidence in this case of defendant being at fault in bringing on the difficulty.

GRANADE & GRANADE, for appellant.  W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

BROWN, J.—(1) The juror Jerry Hopkins, on the voir dire examination, stated that he was opposed to capital and penitentiary punishment, and it was proper for the court to excuse him from service.—*O'Rear v. State*, 188 Ala. 71, 66 South. 81.

(2, 3) The motion to exclude the testimony of the witness Curtis was properly overruled.  No objection was made to the question and the motion to exclude was not made until the witness had been fully cross-examined by the defendant's counsel. —*Kramer v. Compton*, 166 Ala. 216, 52 South. 351; *Hudson v. State*, 137 Ala. 64, 34 South. 854.  Furthermore, there was no dispute that the defendant killed the deceased by shooting him with a pistol, and the testimony of Curtis, to the effect that the wound was inflicted by a shot from a pistol, was in no way prejudicial.

(4, 5) The evidence offered by the state tending to show flight by the defendant was competent, and the objection thereto was properly overruled.—*Carden v. State*, 84 Ala. 417, 4 South. 823; *Sylvester v. State*, 71 Ala. 17; *White v. State*, 111 Ala. 98, 21 South. 330.

The witness Townsend testified that he went to Prestwick to arrest the defendant, and that when defendant saw him he ran in the house and shut the door.  In this connection, the witness further testified: "I was sent up there, I went to make the ar-

rest." And was then asked by the solicitor, "Did he know it?" and answered: "I don't know, sir; unless some one told him." Even if it be conceded the question was objectionable, the answer, being a negative one, was without possible prejudice to the defendant. Furthermore, it appears in this record that no objection was made to the question until the witness had answered it.—*Kramer v. Compton, supra.*

"The movements, appearance, and bearing of the accused and his behavior when charged with crime or confronted with the consequences or with the scene or the surroundings of the crime with which he is charged are always relevant. So, the conduct of the prisoner when attempt was made to arrest him shortly after the commission of the offense was properly allowed to be proved to show his criminal intent," etc.—Underhill, Crim. Evidence, § 117; *Prince v. State,* 100 Ala. 144, 14 South. 409, 46 Am. St. Rep. 28.

(6, 8) It was likewise proper to allow the defendant to show his movements and appearance—that he was frightened—at the time and immediately after the difficulty, matter that was of the res gestæ, and pertinent to the question of the defendant's imminent peril at the time the shot was fired, or the defendant's honest belief in the apparent imminent peril, if such was shown, and the testimony of the witness Wasp showing that the defendant ran by the house and entered from the rear of the house, and his statement that he was frightened or appeared to be frightened, was competent and properly admitted.—*Prince v. State, supra; Burney v. Torrey,* 100 Ala. 157, 14 South. 685, 46 Am. St. Rep. 33; *S. & N. A. R. R. Co. v. McLendon,* 63 Ala. 266. But the court properly sustained the objection to the question asked the witness, "How could you tell he was frightened?" While this question would have been proper on cross-examination of the witness for the purpose of testing his credibility, it was not proper on direct examination.—*Prince v. State, supra.* And the court's ruling in refusing to allow the defendant to show that defendant requested the witness to allow defendant to sleep with witness was also correct. This was not a part of the res gestæ and was not admissible.—*Livingston v. State,* 7 Ala. App. 45, 61 South. 54; *Lundsford v. State,* 2 Ala. App. 38, 56 South. 89.

(9) The question asked the witness Wasp, "I will ask you whether or not you heard Jerry James' wife say: 'Run! run! They are shooting at us. They have a pistol' "—was leading, and

the objection of the solicitor on this ground was properly sustained.—*Anderson v. State*, 104 Ala. 83, 16 South. 108; *Cooper v. Slaughter*, 175 Ala. 217, 57 South. 477. Futhermore, the witness stated in response to other questions that he heard no remark about a pistol.

(10) The state's evidence tended to show that John Rogers, the deceased, and others, followed the defendant and his wife from the depot, the defendant and his wife going in the direction of their home, and that, when Rogers, and those with him caught up with the defendant and his wife, Rogers said, "I asked Jerry to loan me my pistol, and he said, 'Wait until I give it to you,' and turned around and shot"; that Rogers had requested the defendant to let him have the pistol before, but defendant had refused. The defendant offered evidence tending to show that Rogers and these other parties followed defendant and his wife, and, before the defendant shot and killed Curtis, that Rogers and his crowd shot two or three times at defendant and his wife, and that they ran toward their house, and as defendant ran away he fired back at his pursuers. This evidence reasonably points to the conclusion that these parties were acting by preconcert to pursue the defendant and recover the pistol, and the conversation between Rogers and Curtis at the depot was admissible.—*Newsom v. State*, 72 South. 579; *McAnally v. State*, 74 Ala. 9; *Hunter v. State*, 112 Ala. 77, 21 South. 65.

The court allowed the defendant to prove by the witness Ross that he heard a conversation between Rogers and Pete Curtis that night before the killing, in which it was said, "Let's go and get the gun," "the gun that Jerry has." Motion was then made by the solicitor to exclude the evidence as to this conversation, which was sustained by the court. In this the court committed error. Evidence having been offered tending to show and reasonably pointing to the conclusion that the witness Rogers and his companions were acting by preconcert or aiding and abetting each other to recover the gun from the defendant, the conversation between Rogers and Pete Curtis was admissible.—*Morris v. State*, 146 Ala. 66, 41 South. 274. In fact, after it was shown that Rogers and his companions were making an effort to recover the pistol from James when the difficulty occurred, the conversation between Rogers and Curtis was admissible as tending to establish a conspiracy.—*Newsom v. State, supra; Brindley v. State*, 193 Ala. 43, 69 South. 536.

(11) Evidence of the general good character of the accused was competent, but such character cannot be shown by specific facts, such as that he was employed in a position of trust. It is only the general character or reputation that may be shown.— Underhill, Crim. Evidence, § 81; *Mitchell v. State, infra,* 70 South. 991; *Funderberg v. State,* 100 Ala. 36, 14 South. 877.

(12) After it developed on cross-examination that the testimony of the witness Jones as to the general character of Townsend was predicated on some specific act, and not on his general reputation, it was properly excluded by the court.—*Way v. State,* 155 Ala. 63, 46 South. 273; *Moulton v. State,* 88 Ala. 118, 6 South. 758, 6 L. R. A. 301. After the motion was sustained, however, the witness testified, on being further examined, that he based his testimony on what he knew, and also what was generally reputed in the community where Townsend lived, and on this predicate, if the defendant desired to further offer the testimony after it was excluded, he should have called it out by appropriate questions. No error is shown in the ruling of the court in respect to this testimony.

(13) The court ruled correctly in sustaining the objection to the question to the witness Conerly eliciting testimony to the effect that defendant requested Conerly to call the sheriff for defendant.—*Weaver v. State,* 1 Ala. App. 48, 55 South. 956.

(14) A sufficient predicate to show that the statement of the defendant to Streeter was voluntary was laid, and the objection to this testimony was properly overruled.

(15) There was nothing improper in the argument of the solicitor urging the conviction of the defendant if he was guilty. He was acting clearly within the line of his official duty.—*Cross v. State,* 68 Ala. 476.

(16) The question of defendant's guilt and the degree thereof, under the evidence, was for the jury, and the affirmative charge was well refused.—*Finney v. State,* 10 Ala. App. 39, 65 South. 93; *Hargrove v. State,* 147 Ala. 97, 41 South. 972, 119 Am. St. Rep. 60, 10 Ann. Cas. 1126.

(17) Charges 2 and 3 were well refused.—*Stoball v. State,* 116 Ala. 454, 23 South. 162.

(18) Charge 4 was properly refused.—*Daughdrill v. State,* 113 Ala. 7, 21 South. 378; Code 1907, § 6311.

(19) Charges 5 and 6 were invasive of the province of the jury and were well refused.

(20) Charge 7 was invasive of the province of the jury and was otherwise objectionable.—*Daughdrill v. State, supra; Stoball v. State, supra.*

(21) The indictment charges all the degrees of homicide, and charge 8 was well refused.—*Smith v. State,* 103 Ala. 7, 15 South. 843.

(22) Charge 9 was invasive of the province of the jury and was properly refused.

In *Jones v. State,* 13 Ala. App. 10, 68 South. 694, the court announced this proposition: "While evidence showing motive is not indispensable, and therefore not an element of the burden of proof resting on the prosecution, motive is always a legitimate subject of inquiry on the trial of one charged with crime," etc.

(23) Freedom from fault is an essential of the doctrine of self-defense, and this means that the accused must be wholly free from fault.—*Brewer v. State,* 160 Ala. 66, 49 South. 336; *Smith v. State,* 142 Ala. 14, 39 South. 329.

The oral charge of the court, when considered as a whole, is free from reversible error.

For the error pointed out, let the judgment be reversed.

Reversed and remanded.