[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1245 
The appellant was indicted under the Alabama Death Penalty Act for robbery when the victim is intentionally killed and convicted as charged. Code of Alabama 1975, Section 13-11-2 (Code of Alabama 1940, Recompiled 1958, T. 15, § 342 (4), 1975 Interim Supplement). Punishment was fixed at death.
On Friday, August 26, 1976, at approximately 6:45 A.M., the appellant was seen pacing back and forth, as if waiting for someone, immediately across the street and in front of the gate to the Sherman Concrete Products Company in Birmingham, Alabama. The deceased, Lewis Webb, always parked his automobile in this area and customarily carried large sums of money to work every Friday so he could cash the plant employees' payroll checks. When Webb arrived at his place of employment, he parked his car and walked across the street to where several of his friends met every morning beside the gate to discuss sports. The appellant, pulling a stocking mask over his head, came up behind Webb as he was crossing the street, whirled him around and demanded his money. Webb raised his hands and denied having any money. The appellant then reached under Webb's shirt, pulled out the money bag containing $3,000.00 and shot Webb once through the heart. The appellant then ran from the scene of the crime.
Walter Lee Hill and James Earl Jones were sitting outside the plant that morning talking with Webb when the robbery-murder occurred. Both men separately identified the appellant in a pre-trial lineup and testified that they observed the appellant in the area that morning. Hill testified that the appellant walked up one side of the street, crossed and then walked down the plant side of the street right in front of them. Jones stated that the appellant remained on the other side of the street pacing back and forth. Joe Goldson, Webb's brother-in-law, saw the appellant running from the scene as he came to work at Sherman Concrete that morning. When Goldson arrived at the plant gate, Hill told him that Webb had been shot and robbed and pointed in the direction the appellant had escaped and that Goldson had just come from. Goldson went back and saw the appellant in a Thunderbird driven by a woman pulling out of a "Mexican food place". He wrote down the license number of the escaping Thunderbird and returned to the plant.
The Thunderbird was registered to the appellant's sister who testified that the car was purchased in her name for the appellant. *Page 1246 
The defense was alibi. Janet Jackson testified that she was living with the appellant at the time of the crime. On that particular morning they both went to her mother's house arriving about 6:50-6:55 A.M. They left about 7:06 A.M. She drove her mother's car and the appellant drove his Thunderbird and arrived at the Southside Citgo Service Station at 7:15-7:16 A.M. where the appellant left his car to have some work done on it. Ms. Jackson's mother verified this as did Curtis Pickens, the owner of the service station. The appellant took the stand, denied the killing and testified to his alibi.
In reviewing this conviction we are guided by the principle that an accused is entitled to a fair and impartial trial.
 "(T)he law should prevail, without any reference to the magnitude or brutality of the offense charged. No matter how revolting the accusation, how clear the proof, or how degraded, or even brutal, the offender, the Constitution, the law, the very genius of Anglo-American liberty, demand a fair and impartial trial. If guilty, let him suffer such penalty as an impartial jury, unawed by outside pressure, may under the law inflict upon him. He is a human being and is entitled to this. Let not an outraged public, or one which deems itself outraged stain its own hands — stamp on its soul the sin of a great crime — on the false plea that it is but the avenger of the innocent." Seay v. State, 207 Ala. 453, 455, 93 So. 403, 405 (1922).
With these comments as the framework and basis for our review we now proceed to examine the merits of this cause.
 I
Initially, the appellant argues that the imposition of the death penalty as provided by Alabama law is a violation of both state and federal constitutional provisions. The constitutionality of the Alabama Death Penalty Statute (see Code 1975, §§ 13-11-1-13-11-19) was initially proclaimed inJacobs v. State, 361 So.2d 607 (Ala.Cr.App. 1977) and subsequently upheld and followed in John L. Jacobs v. State, 6 Div. 388 (Remanded for further proceedings, Ala.Cr.App., Ms. October 4, 1977), and Wayne Eugene Ritter and John Louis Evans,III v. State, 1 Div. 837 (Ala.Cr.App., Ms. October 25, 1977). Since the appellant has raised no new or additional reason which we have not previously considered for invalidating the Death Penalty Statute, we hereby reaffirm the constitutional soundness of that statute.
 II
The appellant additionally argues that it was error for the trial court to overrule his demurrer to the indictment because of the misspelling of the word "intentionally" in that indictment. The indictment brought against the appellant read, "the defendant did intentially kill the said Lewis Webb".
Before an objection because of false grammar, incorrect spelling, or mere clerical errors is entertained, the court should be satisfied of the tendency of the error to mislead, or to leave in doubt the meaning of the charge to a person of common understanding, reading, not for the purpose of finding defects, but to ascertain what is intended to be charged. Grantv. State, 55 Ala. 201 (1876). Neither clerical nor grammatical errors vitiate an indictment unless they change the words or obscure the meaning, Grant, supra, or unless the error changes a word into one of different import or the sense is so obscured that one of ordinary intelligence cannot determine with certainty the meaning from the context. Sanders v. State,2 Ala. App. 13, 56 So. 69 (1911). Here the sense of the indictment is clear. The error in spelling did not obscure the sense and it is obvious what was intended to be charged. Therefore this defect was not fatal to the indictment. Verbal inaccuracies or clerical errors, which are explained and corrected by necessary intendment from other parts of the indictment, or errors of spelling, not obscuring the sense, are not fatal. Gary v.State, 18 Ala. App. 367, 92 So. 533 (1922). Examples of clerical or spelling errors which were held not to vitiate an indictment are: "aforethought", Sanders v. State, 2 Ala. App. 13, *Page 1247 56 So. 69 (1911); "aforethought", Frazer v. State, 29 Ala. App. 204,195 So. 287, cert. denied, 239 Ala. 309, 195 So. 290
(1940); "atorethought", Curry v. State, 23 Ala. App. 182,122 So. 298 (1929); "a forethought", Sanders v. State, 278 Ala. 453, 179 So.2d 35 (1965); "bihphetamine" for "biphetamine",McKessick v. State, 291 Ala. 564, 284 So.2d 516 (1973); "bu" for "by", Burk v. State, 22 Ala. App. 107, 114 So. 71, cert. denied, 216 Ala. 655, 114 So. 772 (1927); "charged" for "charge", Salts v. State, 21 Ala. App. 573, 110 So. 169, cert. denied, 215 Ala. 247, 110 So. 170 (1926); "controll" for "controlled", Henry v. State, 57 Ala. App. 383, 328 So.2d 634
(1976); "cornally" for "carnally", Brown v. State, 15 Ala. App. 611,74 So. 733 (1917); "di" for "did", Holland v. State,11 Ala. App. 134, 66 So. 126, cert. denied, 191 Ala. 662,66 So. 1008 (1914); "fertilize" for "fertilizer", Kirk v. State,13 Ala. App. 316, 69 So. 350 (1915); "fraudulently" for "fraudelently", Bell v. State, 139 Ala. 124, 35 So. 1021
(1904); "innocense" for "innocence", Mitchell v. State,28 Ala. App. 119, 180 So. 119, cert. denied, 235 Ala. 530,180 So. 123 (1938); "maltous" for "malt", Couch v. State, 6 Ala. App. 43,60 So. 539 (1912); "on" for "one", Witt v. State,5 Ala. App. 137, 59 So. 715 (1912); "papaper" for "paper", Askewv. State, 18 Ala. App. 345, 91 So. 911 (1922); "vive" for "five", Bozeman v. State, 40 Ala. App. 391, 114 So.2d 912, cert. denied, 269 Ala. 610, 114 So.2d 914 (1959). The only Alabama case we found holding the indictment fatally defective because of misspelling or the omission of letters from a word in the indictment is Parker v. State, 114 Ala. 690, 22 So. 791 (1896), "dwell-house" for "dwelling house". Therefore, under these authorities, we hold that the indictment was not vitiated by the appearance of "intentially" for "intentionally".
 III
Finally the appellant alleges that his conviction is due to be reversed because of the comments of the prosecutor in closing argument.
 A.
The first argument objected to occurred when the Assistant District Attorney made the following comment in closing argument.
 "MR. JOHNSON: Don't you know that right now out there on every corner, in every little store, in every little Quick Mart, in every little 7-11 Store they are out there, the owners, the proprietors, and they are considering the odds. They are wondering which way you're going to stack them. Don't you know that the Recardo Cook's and the would be Recardo Cook's of this world are out there and they are considering the odds too. Don't you know they are wondering if you're going to say to them, `We're going to give you a license. We're going to give you a license to kill'.
 "MR. WILKINSON: We object to any argument that suggests the jury giving other people license to kill. We object to that.
"THE COURT: Well, that wouldn't be — I sustain.
"MR. WILKINSON: Did you sustain?
"THE COURT: Yes, sir.
 "MR. WILKINSON: Would you instruct the jury to disregard his last argument?
"THE COURT: I sustained. Go ahead."
The appellant merely asserts that it was error for the trial judge to refuse to instruct the jury to disregard the prosecutor's argument.
The objected to portion of the argument is similar to that made by the prosecutor in Blalock v. State, 8 Ala. App. 349,351, 63 So. 26, 27 (1913), involving a prosecution for allowing stock to run at large, where the solicitor argued that "If you turn this man loose, it will be a license for all them people up there in beat 24 to turn their stock out". The Court of Appeals held that it was not error for the trial judge to refuse to exclude this argument although it was not strictly pertinent because no fact was asserted but simply an inference drawn and argument made thereon. Such arguments have been held to be "not ineradicable". See Fuller v. State, 269 Ala. 312,332, 113 So.2d 153 (1959) (error in statement by *Page 1248 
prosecutor in closing remarks to the effect that a verdict of acquittal would amount to a license to the defendant to return to Phenix City and engage in illegal activities was not ineradicable). The prosecuting attorney may properly argue the necessity of law enforcement as a detriment to crime, the evil results that will flow to society from the failure of the jury to do its duty, the responsibility of trial juries in the suppression of crime and the legitimate inferences to be drawn from the evidentiary and record facts of the case. He may not, however, seek by inflammatory appeals to arouse in the jurors a personal hostility toward, or personal fear of, the accused and neither is it proper for the prosecutor to speculate as to future possible acts or conduct of the accused. Embrey v.State, 283 Ala. 110, 118-120, 214 So.2d 567 (1968); Ash v.State, 33 Ala. App. 456, 460, 34 So.2d 700, cert. denied,250 Ala. 417, 34 So.2d 704 (1948); Cross v. State, 68 Ala. 476
(1881); James v. State, 14 Ala. App. 652, 72 So. 299 (1916);Rogers v. State, Ala.Cr.App., 346 So.2d 29, cert. denied, Ala.,346 So.2d 31 (1977). As defense counsel's objection points out, the prosecutor referred to giving others a license to kill and not to the possible future conduct of the appellant. Prosecutors must be allowed a wide range in their exhortations to the jury to discharge their duties in such a manner as, not only to punish crime, but to protect the public from like offenses and as an example to deter others from committing like offenses. Witt v. State, 27 Ala. App. 409, 174 So.2d 794, cert. denied, 234 Ala. 391, 174 So.2d 795 (1937). Certainly the comments of the prosecutor were not grossly improper or highly prejudicial. Defense counsel did not request a mistrial. In view of the facts that the trial judge did sustain the objection and the remark was not so prejudicial that it could not be cured by proper ruling of that court, the failure to instruct the jury was not error. Scott v. State, Ala.Cr.App.,333 So.2d 619, 622 (1976).
The record reflects that there was no objection to the prosecutor's reference to "Quick Mart" and "7-11" stores although the appellant argues the prejudicial content of the argument on appeal. Even in a prosecution where the punishment is death, improper argument of counsel is not the subject of review on appeal unless there is due objection by counsel, or a motion to exclude, a ruling by the court and an objection to that ruling or a refusal of the court to make a ruling. Embreyv. State, 283 Ala. 110, 214 So.2d 567 (1968); Jackson v. State,260 Ala. 641, 71 So.2d 825 (1954); Johnson v. State, 272 Ala. 633, 133 So.2d 53 (1961); Lee v. State, 265 Ala. 623,93 So.2d 757 (1957). Even if proper objection had been made, the comment would not require a reversal. See Robinson v. State,47 Ala. App. 51, 54, 249 So.2d 872 (1971). Here, as in Robinson, we interpret this argument as an appeal for law enforcement.
 B.
Defense counsel also objected when the Assistant District Attorney stated:
 "This is the first case that the death penalty was reinstated. Don't you think the people who represent the people of Alabama have something in mind when they restored the death penalty. Don't you think that they had in mind people like the Mr. Tortorici's of the world out in their grocery stores.
 "MR. WILKINSON (Defense Counsel): We object to all this referring to other specific incidents and things of that sort, that type of argument, and we object to it.
"THE COURT: Overrule.
"MR. WILKINSON: We except."
Initially we note that we are unable to intelligently review the prejudicial character of the argument, because the comment is fragmentary and the record so incomplete. Pate v. State,32 Ala. App. 365, 26 So.2d 214 (1946); Mincy v. State, 262 Ala. 193, 78 So.2d 262 (1955); Brothers v. State, 236 Ala. 448,183 So. 433 (1938) (Reviewing court would not reverse conviction because of prosecutor's argument that "We ought to tear the electric chair down and build a monument to John Dillinger and `Baby *Page 1249 
Face' Nelson", where connection in which such statement was made did not appear). The comment is not patently or obviously prejudicial for the simple reason that we are not informed of who "Mr. Tortorici" is or was. There was no motion for a new trial and the record does not reveal any further comments on or about "Mr. Tortorici". Hembree v. State, 20 Ala. App. 181,101 So. 221 (1924).
While technically the comment may be said to be improper in that it refers to a matter outside the record, the appellant has in no manner demonstrated that it substantially and prejudicially affected his legal rights. In closing argument a prosecutor should not be permitted to state as facts what he alleged had occurred in the perpetration of another crime having some alleged features analogous to those developed at trial. Cross v. State, 68 Ala. 476 (1881); Williams v. State,83 Ala. 68, 3 So. 743 (1888); Curry v. State, 23 Ala. App. 140,122 So. 303 (1929). Here we have no indication that the comment referred to facts from another case or was designed to institute a comparison between such foreign and irrelevant facts and the facts of the case on trial. Davis v. State,213 Ala. 541, 105 So. 677 (1925). While we may speculate that Mr. Tortorici was the victim of a robbery-murder, such is mere presumption on our part. To read error into the statement we would have to resort to speculation and surmise. Such will not serve as a basis for error. Nolen v. State, 35 Ala. App. 249,45 So.2d 786 (1950). The judgment of the trial court and verdict of the jury are solemn expressions and should not be overturned unless a good legal reason is shown. Freeman v. State,30 Ala. App. 99, 1 So.2d 917, cert. denied, 241 Ala. 178,1 So.2d 920 (1941). We will not presume a fact not shown by the record and make it a ground of reversal. Duncan v. State, 88 Ala. 31,7 So. 104 (1889).
The comment of the prosecutor does not refer to the specific facts of another case and nowhere approaches those comments condemned in Cross, supra; Roy v. State, 24 Ala. App. 419,136 So. 273 (1931); Eaton v. State, 278 Ala. 224, 177 So.2d 444
(1965). In Cross, supra, at 68 Ala. 484, the court summarized the governing law.
 "We sum up, lest we be misunderstood. There must be objection in the court below, the objection overruled, and an exception reserved. The statement must be made as of fact; the fact stated must be unsupported by any evidence, must be pertinent to the issue, or its natural tendency must be to influence the finding of the jury; or the case is not brought within the influence of this rule. To come within the last clause above, namely, where the natural tendency is to influence the finding of the jury, the case must be clear and strong. We would not embarrass free discussion, or regard the many hasty or exaggerated statements counsel often make in the heat of debate, which can not, and are not expected to become, factors in the formation of the verdict. Such statements are usually valued at their true worth, and have no tendency to mislead. It is only when the statement is of a substantive, outside fact — stated as fact — and which manifestly bears on a material inquiry before the jury, that the court can interfere, and arrest discussion."
The mere mention of the name of Mr. Tortorici by the prosecutor in closing argument, even if improper, was not so prejudicial as to have deprived the appellant of a fair trial absent any showing that the name itself would have some sinister effect upon the jury or a juror.
 C.
The third and final instance where the appellant objected to the closing argument of the prosecutor is presented by the following excerpt.
 "MR. JOHNSON: Does anybody doubt that that car, the 1 C-23670, was not at Sherman Concrete Products that morning? Do y'all think that Joe Golson made that up? On the one hand they say —
 "MR. WILKINSON: We object to that. Joe Golson never said any 1 C-23670.
 "THE COURT: Mr. Wilkinson, this is argument. The jury heard the evidence. *Page 1250 
 "MR. WILKINSON: I understand that, and we object to that statement being outside the evidence and we object to it.
"THE COURT: Overrule.
"MR. WILKINSON: Exception."
The prosecutor's remarks were a misstatement of the evidence. Witness Goldson testified that he saw a man run from the scene of the murder and drive away in a Thunderbird automobile with license number "1-23670". Through the principal accountant for the Jefferson County Department of Revenue, the state proved that the only Thunderbird with those numerical digits (1-23670) belonged to the appellant and had a license number of "1 C-23670".
The correct rule of law in this regard is that
 "Generally, it is improper for counsel in argument to the jury to misquote or misstate the testimony, . . . However, the fact that the prosecuting attorney states some portion of the evidence erroneously, or makes exaggerated statements as to its strength, is not error, unless it is clear to the court that accused has been prejudiced thereby." 23A C.J.S. Criminal Law p. 145, § 1093.
It is our conclusion from a review of the evidence that this comment by the prosecutor did not harm the appellant. Rule 45, Alabama Rules of Appellate Procedure.
While we feel that the Harmless Error Rule, A.R.A.P., Rule 45, is to be applied with great caution in capital cases, there is "no reason why it should not be applied in a capital case where it is obvious that a defendant could not have probably been injured in a substantial right by a ruling". Seibold v.State, 287 Ala. 549, 559, 253 So.2d 302 (1971). This court does not "tower above the trials of criminal cases as impregnable citadels of technicality". Kotteakos v. United States,328 U.S. 750, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557 (1946). A comprehensive and lengthy review of the case law in this area of prosecutorial limitations on closing argument convinces this court, as we have often held, that each case must be considered and reviewed on its own merits, "resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations." Kotteakos, supra, at 66 S.Ct. 1246.
In determining that no substantial prejudice to the appellant has resulted from the prosecutorial summation we have taken into account the facts that the remarks were single or isolated and not repeated, that the trial was relatively short and the jurors would not have been misled over the precise import of any testimony, and that the cumulative effect of the errors is not sufficient to require reversal. From the record the atmosphere of the courtroom throughout the trial convinces us that the appellant received a fair and just determination of his guilt. And finally we have considered the overwhelming evidence of the appellant's guilt. While it is not an appellate court's function to determine guilt or innocence or to speculate upon probable reconviction and decide according to how the speculation comes out, to weigh the error's effect against the entire setting of the record without relation to the verdict would almost be to work in a vacuum. Kotteakos, supra, at 66 S.Ct. 1247.
Finding direction in the opinion of Justice Livingston inStain v. State, 273 Ala. 262, 266, 138 So.2d 703 (1962), we are of the opinion that the errors complained of in closing argument had no substantial influence on the jury.
In the words of Judge Harris in Jacobs v. State,361 So.2d 607 (Ms. 1977), this was a "conscienceless and pitiless" crime evidencing a "cold stone heart" and "a sad commentary upon the very name of civilization of the ease with which human beings can be turned into beasts."
The judgment of conviction is affirmed. We will not fix the date of execution until the appellant has been afforded the opportunity for further appellate review.
AFFIRMED.
All Judges concur. *Page 1251