Petitioner Billy Wayne Waldrop was convicted and sentenced to death for robbery-murder in violation of § 13A-5-40, Code of Alabama (1975). The facts are set out in Appendix "A" to the opinion of the Court of Criminal Appeals, Waldrop v. State,459 So.2d 953 (Ala.Crim.App. 1983). Stated briefly, Waldrop, along with two other men, Eugene Singleton and Henry Mayes, conspired to rob and murder, if necessary, the victim, Thurman Macon Donahoo. On the night of June 2, 1982, the three men broke into Donahoo's home and robbed him of a five-carat diamond ring, along with other items of value. Before leaving the scene of the crime, Waldrop and his accomplices killed the victim and set fire to the victim's house. The house was completely destroyed by the fire, and Donahoo was burned almost beyond recognition.
Waldrop was convicted of capital murder and sentenced to death. The Court of Criminal Appeals reviewed the conviction, and, after independently determining that the death sentence was appropriate, affirmed Waldrop's conviction and sentence. We granted the petition for writ of certiorari pursuant to Rule 39 (c), A.R.A.P. After careful review of that opinion, the record, and the briefs of the respective parties, we affirm the decision of the Court of Criminal Appeals.
In this Court, Waldrop raises additional issues not addressed by the Court of Criminal Appeals. Waldrop claims, inter alia, that he was denied a fundamentally fair trial because the prosecutor injected improper and prejudicial comments into the closing argument during both the guilt and the sentencing phases of trial.
In all death penalty cases, this Court pursuant to Rule 39 (k), A.R.A.P., "may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner." In this case, Waldrop's failure to raise a claim of error regarding the prosecutor's arguments at trial, "while weighing against Defendant as to any possible claim of prejudice, serves as no impediment to our scope of review pursuant to the `plain error' mandate in death penalty cases."Bush v. State, 431 So.2d 563 (Ala.), cert. denied, ___ U.S. ___,104 S.Ct. 200, 78 L.Ed.2d 175 (1983).
Accordingly, having carefully scrutinized the entire proceeding, both at the guilt and sentencing phases, we conclude that the prosecution did not exceed the permissible bounds of argument, and that none of Waldrop's substantive rights were violated.
 -A-
Waldrop initially claims that the prosecutor improperly vouched for the credibility of his law enforcement witnesses by arguing:
 ". . . Two, is the police officers. And I want to tell you this. I am proud. And this community ought to be proud, to be associated with officers like Dennis Surrett, Pee Wee Hurst and Jerry Studdard, because they have done one heck of a job. And Mr. Fannin talked to you about it, for just a second, about that the State has got all these people. They have got experts here and experts there. And here they are seated at the table. You know why we have to have them. We have got to run this guy over four states, picking up witnesses here and there. I am going to tell you, they have done as good a job on this as has ever been done. They have done an outstanding job and this community ought to be proud of them."
This portion of the argument objected to was made during the guilt phase of trial, in reference to the prosecutor's explanation of the four links in the chain of justice: the witnesses; the police officers; the D.A.'s office; and the jury. *Page 961 
Waldrop claims that again in the sentencing phase the prosecutor improperly encouraged the jury to rely on him, as well as on his trusted police investigators. The prosecutor argued: "Well, I'll just tell you this. I have done my job, Mr. King [the Assistant District Attorney] has done his job and the police officers have done their jobs. . . ."
Waldrop asserts that these arguments were highly improper in that they bolstered the credibility of the prosecution's witnesses, and also injected the personal opinion of the District Attorney into the fray.
Contrary to Waldrop's contentions, however, we do not agree that the State deliberately attempted to bolster the witnesses by vouching for their credibility. In Brown v. State,393 So.2d 513 (Ala.Crim.App. 1981), the Court of Criminal Appeals observed:
 "Attorneys should be careful in their arguments to the jury to refrain from an injection of their own personal experience or knowledge in support of their argument, as distinguished from what they deem to be reasonable inferences to be drawn from the evidence."
In Brown, the prosecutor, commenting on the defendant's claim that his confession was not voluntary, argued: "[H]e gets up here now when he is on trial for this crime and testifies that he didn't know what he was doing. That is not anything unusual. I see it all the time." In comparison, in the instant case the prosecutor was merely commenting on the investigation conducted by the police officers. That they did a good job in their investigation is a reasonable inference which was properly drawn from the evidence presented at trial. Moreover, the prosecutor was not injecting his own knowledge or experience into the argument, nor was he indicating a personal belief in the veracity of the witnesses' statements. "During closing argument, the prosecutor as well as defense counsel has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference." Milton v. State,417 So.2d 620 (Ala.Crim.App. 1982).
 -B-
Waldrop next claims error in that the prosecutor argued a patriotic pitch directed at motivating the jurors to impose the death penalty in order to protect society. The first statement complained of occurred during the guilt phase of the trial, as follows:
 "[B]ut when we talk about the United States, we talk about something we came over here for. And we fought a war for. To be safe in our homes. And that is what we are getting down to now, ladies and gentlemen. A man [the victim] is 72 years old. And we are getting to where we have got to lock our doors to live in our houses, from the Billy Wayne Waldrops of the world."
In the same vein, Waldrop asserts that during the sentencing hearing, the prosecution improperly encouraged the jury to join the war against crime, Hance v. Zant, 696 F.2d 940 (11th Cir. 1983), when he argued as follows:
 "Well, I'll just tell you this. I have done my job, Mr. King has done his job and the police officers have done their jobs, and the witnesses have done their job. They and you. It is up to you as to what kind of county we are going to have. It is up to you whether you are going to let a man like that come down here and rob and burglarize and kill the citizens of this county.
 "And they talked about capital punishment this, and a meaningful life sentence. You tell these ladies who work out in these convenience stores that it don't mean any more to rob them than it does if you rob and kill them, where they destroy the witnesses. It is up to you what kind of county you are going to have and I'll submit this to you. . . . This case is what capital punishment is all about. That man by his past conduct of two murders and by his conduct down there on June the 3rd and June the 2nd of 1982 has lost his right to live in this society. And I'll submit this to you. What is fair to him, what is fair to society, *Page 962 
capital punishment, everybody on this jury believes that if somebody comes to your house, that you have got the right to kill them to protect your loved ones. Don't take away society's right of self-defense because that is what this case is about.
 "There is the killer and society should have the right to self defense against people like that."
In Alabama, the rule is that a district attorney in closing argument may make a general appeal for law enforcement. Embreyv. State, 283 Ala. 110, 118, 214 So.2d 567 (1968).
This line of argument is "within the latitude allowed prosecutors in their exhortations to the jury to discharge their duties in such a manner as, not only to punish crime, but to protect the public from like offenses and as an example to deter others from committing like offenses." Varner v. State,418 So.2d 961 (Ala.Crim.App. 1982); Cook v. State,369 So.2d 1243 (Ala.Crim.App. 1977), affirmed in part, reversed in part on other grounds, 369 So.2d 1251 (Ala. 1978). The argument complained of in the instant case is similar to that made by the prosecutor in Cook, supra. In Cook, originally brought under the 1975 Alabama Death Penalty Act, the prosecutor made the following comment during closing argument:
 "MR. JOHNSON: Don't you know that right now out there on every corner, in every little store, in every little Quick Mart, in every little 7-11 Store they are out there, the owners, the proprietors, and they are considering the odds. They are wondering which way you're going to stack them. Don't you know that the Recardo Cook's and the would be Recardo Cook's of this world are out there and they are considering the odds too. Don't you know they are wondering if you're going to say to them, "We're going to give you a license. We're going to give you a license to kill'."
369 So.2d at 1247.
In discussing the scope of legitimate appeals for law enforcement, this Court noted, quoting Blalock v. State,8 Ala. App. 349, 63 So. 26 (1913):
 "The excerpt from the argument of the solicitor . . . cannot be taken to mean more, when construed in connection with the evidence, than that it was the duty of the jury to convict the defendant, if the evidence was sufficient, for the purpose of deterring others from committing similar offenses. This is one of the objects sought to be attained by the enforcement of the criminal laws and punishment of offenders against it. At most it could be deemed no more than an argument, intended to illustrate the evil consequences that might result from a failure of the jury to do their duty in the premises if the evidence was sufficient to authorize a conviction. It does not appear from the isolated excerpt set out that the solicitor was asserting any fact, and it is not error to refuse to exclude the argument of counsel, although not strictly pertinent, when no fact is asserted, but simply an inference is drawn and argument made thereon."
Cook, supra, 369 So.2d at 1254-55.
As in Cook, the closing argument in the instant case did not imply that the defendant himself would commit illegal acts in the future, nor did the prosecutor seek by inflammatory appeal to arouse in the jurors a personal hostility towards, or fear of, the defendant. Accordingly, the prosecutor's comments properly argued the necessity of law enforcement as a deterrent to crime and as a protection of society.
 -C-
Finally, the defendant argued that the following statement made by the prosecutor during the sentencing hearing was improper:
 "Our Legislature, you know we are governed by the laws of God and man. And I'll submit to you the laws of God, He believed in capital punishment and you will find it many times throughout the Bible." *Page 963 
Waldrop asserts that the prosecutor's argument is based upon extrinsic and unproven facts, motivated purely to incite the emotions and passions of the jurors. We, however, do not agree that this comment was improper. If, as the Attorney General states in his brief, "this argument was simply a statement that the jurors should not refuse to impose the death penalty in an appropriate case because of religious feelings," then the prosecutor's comments were consistent with the duty imposed upon the jurors. Furthermore, "`counsel's argument should not be so restricted as to prevent reference, by way of illustration, . . . to principles of divine law or biblical teachings.'" Poole v. State, 292 Ala. 590, 298 So.2d 89 (1974).
In view of the above discussion, we find that the errors complained of in closing argument had no improper impact or influence upon the jury's determination. Furthermore, pursuant to § 13A-5-53 Alabama Code (1975), we find no error adversely affecting the rights of the defendant in the conviction or sentencing proceedings. Likewise, upon review, we conclude that death was the proper sentence in this case. Accordingly, we affirm.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.