# Couch *v*. The State.

## *Violating Prohibition Law.*

(Decided December 17, 1912.　60 South. 539.)

1. *Trial; Argument of Counsel.*—Where it appeared from the evidence of the defendant herself that she was not at the place where the crime was alleged to have been committed, but that she had gone down to A., where her husband was a miner, to see him, not having seen him for more than three weeks before that time, and the counsel for defendant in argument stated that defendant was not present when the crime was committed, having gone down to see her husband, who was making her an honest living, the latter fact not appearing in evidence, it was not reversible error to permit the solicitor in his argument to ask why, if accused was honest and not violating the law, she was not living with her husband, it appearing from the evidence that they were not living together, although it did not appear that they had been legally separated.

2. *Same.*—Where defendant's counsel in argument stated that the witness for the state should not be believed because they were paid a salary for running down blind tigers, a statement by the solicitor in conclusion, that carrying out that argument a step further, it might be said that the jurors would render a corrupt verdict because they were being paid, although illogical, contained no statement of fact, and was, therefore, not improper.

3. *Indictment and Information; Affidavit; Sufficiency.*—An affidavit charging the defendant with selling spirituous, vinous or maltous liquors instead of malt liquors as prescribed by the statute, was not insufficient, since a man of ordinary understanding would readily know what was meant thereby.

4. *Same; Alternative Allegation.*—Where an indictment charges offenses in the alternative, each alternative must charge an indictable offense, else. the indictment is bad in toto.

5. *Same; Technical Irregularity.*—If the sense of an indictment is clear technical exceptions thereto will not be favorably regarded, and verbal inaccuracies or clerical errors which are explained or corrected by necessary intendment from other parts of the indictment, or errors in spelling not obscuring the sense, are not fatal.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Lucy Couch was convicted of violating the prohibition law, and she appeals. Affirmed.

MATHEWS & MATHEWS, for appellant. Counsel discuss the indictment, but without citation of authority. They insist that the court erred in not excluding the solicitor's remarks.—*B. R. L. & P. Co. v. Drennen,* 57 South. 876. The court was also in error in refusing to exclude the remarks of counsel relative to the jurors returning a corrupt verdict because paid $2 per day.— *Wolf v. Minnis,* 74 Ala. 386; *Sullivan v. State,* 66 Ala. 48; *Cross v. State,* 68 Ala. 476; *Florence, etc. v. Field,* 104 Ala. 471; *Berry v. State,* 10 Ga. 511; *E. T. V. & G. R. R. Co. v. Carloss,* 77 Ala. 443.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The solicitor's remark was strictly in reply to argument made by defendant's counsel, and were not improper in any event.—*Childress v. The State,* 86 Ala. 77; *Green v. The State,* 97 Ala. 59.

THOMAS, J.—1. The defendant was tried on an affidavit, which charged, omitting the formal parts, that the defendant sold "spirituous, vinous, or *maltous* liquors without a license and contrary to law."

2. There was only two witnesses for the state—Long and Teer—each of whom testified, respectively, that they were together on January 2, 1912, and went to defendant's house at Johns, in Jefferson county, Ala., about 9 o'clock that morning; that there was no one else there at the time, except themselves and the defendant, who is a woman; that they were at the house about

two hours, and while there they bought from, paid the defendant for, and drank, several bottles of beer, which were on ice, and five or six drinks of whisky by the drink. In the language of one of the witnesses: "We were there in the room with her about two hours, and would buy a drink whenever we would get dry." On cross-examination each of said witnesses stated that they were under employment at $12.50 per week and expenses to run down "blind tigers;" that they did not get any extra compensation for convictions, but that they, as witnesses in this case, were drawing the regular per diem pay and mileage allowed witnesses by law. The defendant, in her own behalf, testified that she did not know and had never seen either of said state's witnesses until this case came up for trial, when she saw them, for the first time, in the courtroom, that she did not sell them any beer or whisky on the day named by them, January 2, 1912, and that she was not at Johns at all on that day as testified to by them; but left Johns on the evening before for the purpose of going to see her husband at Acmer, in St. Clair county, Ala., who works in the mines there, and that she did not return to Johns until the 4th day of January, 1912. On cross-examination she stated that before that time she had not been to Acmer to see her husband in about three weeks; but that he had been down to see her during Christmas. There was other testimony, but we have stated a sufficient amount for an intelligent review of the questions presented by the record.

3. Counsel for defendant argued before the jury "that defendant was not present at the time she is alleged to have sold liquor to the state's witnesses, but had gone to St. Clair county to see her husband, who was a coal miner, *making her an honest living.*" The part underscored was an argument, but a statement of

fact, which had not been proved, and was not permissible to be proved. However, the solicitor in his closing remarks assumed its truth, and in reply said: "[But] if she [herself] was honest and not violating the law, why wasn't she living with her husband, [who was so making an honest living for her]?" The brackets are ours, to make clear the meaning as we interpret it. There was objection by defendant to this statement of the solicitor and motion to exclude it from the jury on the ground that the argument was improper, and that there was no evidence that she was not living with her husband. Objection and motion was overruled and exception taken. The sense in which the solicitor, by the statement in interrogative form, used the words, "why wasn't she living with her husband?" is to be determined in the light of and with reference to the evidence, and it is thereupon clear that he meant to state and stated no more than what defendant's own evidence showed, and that was that she was not actually and in fact living with her husband—she actually living, as her evidence showed, at Johns in Jefferson county, and he actually living at Acmer in St. Clair county, Ala. Constructively and in law they may have been living together, while actually and in fact living apart. This depends entirely upon the intention of the parties. Naturally and customarily, however, the wife is by the husband like Ruth was by Naomi—"whither thou goest I will go"—though it often happens that exceptional circumstances of business or other things bid defiance to the heart's dictates and force them to temporarily live actually apart, while constructively and legally living together. Whether this was one of those cases we do not know, for the evidence is silent. However, the solicitor's statement only meant what the evidence showed, brought out, too, as that evidence was, at the instance of

the defendant, and was not subject to the objection by defendant. No other part of the remarks of the solicitor objected to stated or undertook to state any fact, but was merely an argument—"if she was honest and if she was not violating the law," etc.—entirely permissible, we think, under the evidence.—*Childress v. State,* 86 Ala. 87, 5 South. 775; *Dennis v. State,* 139 Ala. 109, 35 South. 651.

4. Defendant's counsel argued before the jury that they should not believe witnesses for the state as they received a salary of $12.50 per week and expenses and $1.50 per day and mileage as witnesses. The solicitor in reply said: "If it can be argued that these witnesses for the state would not swear the truth because they are making $12.50 per week and expenses, and are allowed in addition $1.50 per day and mileage as witnesses, you might carry that argument a step further, and say because you are summoned and brought here as jurors and paid $2 a day and mileage you will make corrupt verdicts." This argument was suggested by that of defendant's counsel, and, while somewhat illogical, it contained no statement of fact, and purported to be only an argument.—*Green v. State,* 97 Ala. 59, 12 South. 416, 15 South. 242; *Gilliland v. Dunn,* 136 Ala. 327, 34 South. 25. We are not authorized to adopt such a censorship of the arguments of counsel as requires us to judge of their logic or force. This is for the jury. In *Cross v. State,* 68 Ala. 484, the Supreme Court of this state quote approvingly: "It is sufficient to reverse a judgment for counsel against objection to state facts pertinent to the issue and not in evidence, or to assume, arguendo, such facts to be in the case when they are not"—and then add: "We would not embarrass free discussion, or regard the many hasty statements counsel often make in the heat of debate, which cannot and are not expected

to become factors in the formation of the verdict. Such statements are usually valued by the jury at their true worth, and have no tendency to mislead. It is only when the statement is of a substantive, outside fact, stated as a fact, and which manifestly bears on a material injury before the jury, that the court can interfere and arrest discussion."

5. The defendant demurred to the affidavit upon which she was tried, and which is sufficiently set out in paragraph 1 hereof, raising the point that it charged no offense, for the reason that defendant is charged in the affidavit with selling "spirituous, vinous, or maltous liquors," instead of "spirituous, vinous and malt liquors," as the statutes prescribes. The rule of law is that an indictment charging offenses in the alternative each alternative must charge an indictable offense, and, failing therein, the indictment is bad in toto.—*Horton v. State,* 53 Ala. 493; *Raisler v. State,* 55 Ala. 64; *Hornsby v. State,* 94 Ala. 55, 10 South. 522, and cases there cited.

One alternative in the affidavit in the present case, as shown, charges the defendant with selling "maltous" liquors. The correct adjective is "malt" and never "maltous" for there is no such word as the latter. However, we can readily understand how easily euphony could have led the scribe who drafted the affidavit into the mistake of using, in the connection he did, "maltous," instead of malt; for next preceding it, in the affidavit and in the form prescribed by statute, are the adjectives "spirituous" and "vinous," both ending in "ous," the very ending he added to the adjective "malt" and charged a sale of "spirituous, vinous, or maltous liquors." The rule for the interpretation and construction of even indictments, which are constructed more strictly than affidavits (as this is) upon which defend-

[Gleason v. The State.]

ants are tried, is, if the sense is clear, nice, or technical exceptions are not to be favorably regarded, and verbal inaccuracies, or clerical errors, which are explained and corrected by necessary intendment from other parts of the indictment, or errors in spelling, which do not obscure the sense, are not fatal.—22 Cyc. 291. In the application of this rule our Supreme Court has held that "gol" should be read "gold" (*Grant v. State*, 55 Ala. 207); that "peurson" should be read "person," and "pestol" should be read "pistol" (*Hampton v. State*, 133 Ala. 182, 32 South. 230); that "geucose" should be read "glucose" (*Elder v. State*, 162 Ala. 41, 50 South. 370); and this court has held that "of forethought" should be read "aforethought" (*Flowers v. State*, 2 Ala. App. 69, 56 South. 98). And in this case we hold that "maltous" should be read "malt"; for it is clear, we think, to a man of ordinary understanding, from the connection in which the word is here used, that such it was intended to mean.

We find no error in the record, and the case is affirmed.

Affirmed.