HARRIS, Judge.
Appellant was convicted of robbery and his punishment fixed at thirty years and one day in the penitentiary. At arraignment, in the presence of his attorney, he pleaded not guilty. After conviction he gave notice of appeal and was furnished a free transcript. New counsel was appointed to represent him on this appeal.
Appellant did not testify nor did he offer any substantive testimony tending to show that he was not guilty. The case went to the jury on the evidence adduced by the State which showed that on the night of October 4, 1975, the Buzz Oil Station located on Ninth Street in Tuscaloosa, Alabama, was robbed by three black men. The indictment charged that $1,478.46 in cash, including a check in the amount of $93.16 drawn on Olympia Mills and cashed by the station on the day of the robbery, was taken by appellant. Only a part of the money and the check were recovered after the robbery. During the robbery the night manager, Artis Reese, was shot in the ankle.
As the robbers left the station, Zack Allen, an off-duty police officer, arrived at the scene and went into the station. An elderly black man told him that they had just been robbed and he saw Artis Reese on the floor and blood around him. Allen got back in his car and went in pursuit of the robbers. He was unable to apprehend the robbers but found the automobile in which they had been riding parked in a residential area with the door on the driver’s side open.
Subsequently, Sergeant James H. McDaniel, another police officer with the Tuscaloosa Police Department, was dispatched to assist in the robbery investigation. He saw a lone black male walking away from the Buzz Station on Ninth Street and Twenty-eight Avenue. McDaniel saw this man walk into a parking lot for City employees and stop by the side of a pickup truck. McDaniel drove into the parking lot, stopped and asked the man for identification. The man failed to produce any identification and the officer began to pat him down, and he felt something in the man’s jacket pocket, at which time the man shoved the officer and started to run. McDaniel drew his service revolver and ordered the suspect to stop. The suspect then backed up against the pickup truck and put an arm over into the bed of the truck. McDaniel shoved the suspect who started to run again. The officer ordered the suspect to halt and fired a shot into the air and another shot at the suspect’s feet when he failed to stop. The officer lost sight of the suspect running through a cemetery lot across the street from the parking lot. McDaniel then checked the bed of the truck and found a .25 caliber semi-automatic pistol and $407.16. This amount included the check drawn on Olympia Mills in the amount of $93.16 which had been cashed earlier that same day. The pistol was identified by the Assistant State Toxicologist, *514 James C. Britton, as being the same pistol which fired projectiles recovered near the cash register at the Buzz Station.
Delethea Hawkins, the sister-in-law of two of the co-defendants, Dennis and Algie Hawkins, testified that she knew appellant and on the night of the robbery she saw him running from the Buzz Station and he was carrying what appeared to be a bag. She was riding in an automobile with her father-in-law and appellant came into full view of the headlights of the car. She was positive in her identification of appellant and further made a positive in-court identification of appellant.
Willie Ann Hawkins, wife of co-defendant Dennis Hawkins, testified that Theodis Kimbrough left his bicycle at her house the night of the robbery and never returned for it. She stated that appellant, her husband, and Ronnie Hawkins all left her house in a borrowed automobile around 9:00 p. m. the night of the robbery.
Now the scene changes. On March 5, 1976, in Mapleswood, a suburb of St. Louis, Missouri, Officers Ron Morton and Michael Club of the Mapleswood Police Department were investigating an automobile accident. At the accident scene, Officer Morton noticed a black male dressed in a heavy fur coat. Morton’s attention was drawn to the man because of the warm temperature, around fifty degrees. Defense counsel introduced evidence that the temperature was then 31 degrees. In addition to the heavy coat, Morton noticed that the man averted his gaze and that he had never seen him before in the neighborhood. Morton further testified that several businesses were in the area, among them new and used car dealerships. This was a high crime area with a high incidence of theft of radios, stereo tape players, and CB radios from the cars, and the cars as well.
Upon conclusion of their traffic investigation, Morton and Club drove down the street and stopped parallel to the-man Morton had observed. When asked for identification, the man presented the officer with an Alabama driver’s license, with the name Theodore Ogden on it. At that time Club ran a “NCIC” check and received a “hit” which revealed that Ogden, an alias of appellant, was wanted on a fugitive warrant originating at Kilby Prison in Alabama for escape, stemming from a 1969 robbery conviction.
As this dispatch was received, appellant ran from the police car. Morton and Club fired warning shots, but appellant did not stop. The officers were unable to apprehend him.
Later that night, Harvey Kneznehoff, also of the Mapleswood Police, having received a description of appellant, saw appellant and called to him. Kneznehoff patted down the appellant and checked his billfold for identification when appellant told him he had no identification. Having found out this was the subject he was told to look out for, Kneznehoff placed appellant under arrest and read him his Miranda rights. Appellant stated he understood these rights.
Subsequently, Kneznehoff contacted Officers Morton and Club, telling them that he had apprehended the subject who had fled from them earlier in the evening. Approximately two hours later at 6:00 or 7:00 a. m., Kneznehoff received another NCIC “hit” stating that appellant was wanted in Tuscaloosa for assault with intent to murder and robbery, from which the present case arose.
Kneznehoff then informed appellant of the charges against him in Tuscaloosa. Appellant told him that he had been “sold out” by his buddies. Appellant said he was present at an armed robbery in Tuscaloosa and that a man had been shot. He denied that he received any money from the robbery and denied that he had shot the man. Appellant said he ran after the robbery and got in a fight with “some sheriff’s deputy,” that he had knocked him down and had run. He stated the officer shot at him. Appellant continued by saying that people had been shooting at him all his life.
Officer Morton also questioned appellant concerning the robbery in Tuscaloosa. Appellant stated he had participated in the robbery of a gas station with two other *515 people. He also stated that he had been shot at by a policeman who came upon him while he was trying to hide the gun and the money from the robbery in a truck.
Appellant moved to suppress the admission into evidence of his statements to the Missouri police officers outside the presence of the jury. Appellant contended that there was no probable cause to stop and question him. The trial court denied this motion and appellant claims that this was error.
The United States Supreme Court held in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) that a police officer may in appropriate circumstances and in an appropriate manner approach a person for investigating possible criminal behavior even though there is no probable cause to arrest. Of course the police officer must be able to point out “specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.”
Here, appellant was seen by Officers Morton and Club, walking alone in a business district which was known to police as a high crime area. The record reflects that car dealerships in that area had suffered from a rash of thefts of parts and cars. It is not material that there is a dispute as to the temperature on that evening, relating to appellant’s wearing a heavy coat. As one officer said, the coat was bulky enough to conceal stolen auto parts, or a shotgun. Appellant’s constitutional rights were not violated and the trial court did not err in denying appellant’s motion to suppress.
After the trial court determined that appellant’s statements were admissible, the jury returned and testimony concerning the arrest of appellant and his subsequent statement were heard.
The following transpired during the testimony of Officer Kneznehoff:
“Mr. Smith: All right sir. When you were given the description, were you informed of the dispatch concerning him?
“A: Yes, sir.
“Q: And what would that have been about?
“A: ... He was wanted as a fugitive _ _ .
“Mr. Burns: We object.
“The Court: Overrule.
“Mr. Burns: Except.
“A: He was wanted by the State of Alabama as a fugitive from Kilby Correctional Institution.
“Mr. Burns: Judge, we object.
“The Court: Overrule.
We move for a mistrial. “Mr. Burns:
Overrule motion for a mis-“The Court: trial.
“Mr. Burns: We except.
[[Image here]]
“The Court: Just a minute. I am going to sustain the objection to the subject being wanted by Kilby Correctional Institution. Please disregard any such testimony ladies and gentlemen.”
During the testimony of Officer Ron Morton the following occurred:
“Mr. Smith: Now going further, did you have any conversation at that time with the defendant concerning his leaving the State of Alabama?
“A: Yes . . .1 made the comment to him, ‘Well, I guess you will be going back to Alabama now.’
* Hi * * * *
“A: Well, he said, he didn’t make a statement. He asked me the question, ‘If you were a nigger and you had already done four years on an Alabama Road Gang and you committed another robbery, would you want to go back?’ ”
Counsel again objected and moved for a mistrial again. The Court overruled appellant and admitted the testimony on the question of flight.
Morton also testified that appellant stated he would even shoot a policeman to keep from going back to Alabama. Again counsel objected and was overruled.
Appellant contends it was error to admit evidence of his past criminal history. As appellant maintains, it is not competent to prove one crime by proving another and *516 that evidence of defendant’s commission of another crime unrelated to the crime charged is inadmissible. Brantley v. State, 294 Ala. 344, 317 So.2d 345, on remand, 55 Ala.App. 717, 317 So.2d 347, cert. den. 294 Ala. 346, 317 So.2d 348.
However, it should be noted that the trial court instructed the jury to disregard the testimony concerning appellant being a fugitive. This cured any error made by the original admission into evidence. Gavin v. State, 52 Ala.App. 469, 294 So.2d 169, cert. den. 292 Ala. 722, 294 So.2d 170. Where the trial court instructed the jury to disregard testimony by a prosecution witness that the defendant was out on parole for a prior offense at the time the presently charged crime was committed, this Court held there was no error. Coe v. State, 53 Ala.App. 457, 301 So.2d 223.
As to the reference made by the appellant to his criminal record in a statement to Officer Morton, there was no error in admitting the statement in evidence. Appellant cited Monk v. State, 258 Ala. 603, 64 So.2d 588, for the proposition that such a statement is inadmissible. The Alabama Supreme Court held it was error to permit a police officer to testify to a conversation with defendant in which defendant stated he was already under a sentence of 208 years at the time he committed the charged crime. The Court noted that such testimony probably induced the jury to impose the death penalty. Of course, there is a much stricter standard of review in death penalty cases. Easley v. State, 246 Ala. 359, 20 So.2d 519; Alberson v. State, 254 Ala. 87, 47 So.2d 182.
Appellant also contends that Sims v. State, 253 Ala. 666, 46 So.2d 564, is controlling in this situation. There the Supreme Court stated:
“We think a good statement of the rule is that if the confession indicates that accused has committed a separate offense it should be excluded by the court if its separation is possible, leaving the balance intelligible, unless it tends to prove accused guilty of the crime charged, or the motive for its commission, or where such part tends to explain the remaining portion of the confession.”
Appellant’s statement, however, does tend to prove him guilty of the crime charged. Appellant told Officer Morton, “Would you want to go back if . you committed another robbery . . .”
In addition to this, appellant’s statement concerns his flight to avoid prosecution. It is well established that the State may prove that the accused was engaged in flight to avoid prosecution. Pierce v. State, 51 Ala.App. 166, 283 So.2d 618.
Here appellant stated he would go so far as to kill a police officer to prevent his return to Alabama. It is apparent that appellant’s statement shows consciousness of guilt and reveals motivation for flight, e. g. awareness of the consequences of commission of a crime. There was no error in admission of this statement in evidence.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.