TYSON, Judge.
James Bruce Wheat was charged with the second degree burglary and grand larceny of certain properties belonging to Berea Church in Montgomery, Alabama, in a two-count indictment. The jury found the appellant “guilty of grand larceny,” and the trial judge set sentence at seven years imprisonment.
The appellant made a pretrial motion to suppress, moved to exclude the State’s evidence, and requested, in writing, the affirmative charge. From adverse rulings on these matters, appellant prosecutes this appeal.
Reverend Bruce Walker testified that, on September 13-14, 1978, he was minister of the Berea Church, located at 223 Fleming Road in Montgomery. In response to a telephone call from Detective Murphy of the Montgomery Police Department, Reverend Walker went to Police Headquarters where, in Detective Murphy’s office, he identified a Gibson bass guitar and a Martin Model 701 guitar as belonging to the Berea Church. Reverend Walker testified that he authorized the purchase of both of these guitars with church funds.
Reverend Walker also indicated that he knew the appellant, James Bruce Wheat, and that Mr. Wheat and his wife had attended this church several times, and, together with one Wayne Bordes, he had contracted with the two men to paint the exterior of the church. Reverend Walker indicated that his church had been trying to help the Wheat family to get established in Montgomery.
Reverend Walker indicated that, about 6:00 on the night of September 13, 1978, Mr. Wheat came to the church and they discussed some personal matters, that Mr. Wheat subsequently came to the 7:30 service that Wednesday evening. After church, Reverend Walker locked the building, including the office entrance, and checked all exits. The following morning, Reverend Walker was called to the school building and observed that a Sunday School room, off the auditorium, had a broken window. He stated that this was on the first floor. He stated that he had not given anyone permission to enter the building, and the broken window was discovered about 9:00 a. m. on Thursday, September 14, 1978.
About a week later, on either Thursday or Friday, Reverend Walker stated, he was called to the Montgomery Police Headquarters and there he recovered two speakers, a custom amplifier, and three practice guitars. He stated that these items were identified at Police Headquarters as the ones missing from the church, on September 26, 1978.
Reverend Walker testified that he identified the two larger guitars, the Gibson bass guitar and the handmade Martin guitar, on September 14,1978, at Police Headquarters.
In response to cross-examination and redirect, Reverend Walker gave the serial numbers and a more specific description of the speakers as being Peavy Column speakers, that the amplifier was a Custom 300 Series, that the Martin handmade guitar was a No. 701, and the Gibson Bass guitar was an Eb/lo model.
Reverend Walker indicated all these items had been bought with church funds at *402 his direction for the use of the church and its membership. He further indicated that all of these items were missing on the morning of Thursday, September 14, 1978.
Harold Barnett testified he lived in the Jasmine Hill section of Wetumpka, Alabama, and on the night of September 13, 1978, he had stopped by the “H & T Grill” on Highland Avenue in Montgomery, where he had a couple of drinks with two friends. Mr. Barnett indicated that two men came into the grill, and that one, whom he testified, in his best judgment, as the appellant, James Wheat, came over and asked if he was interested in buying some guitars. The man stated that he wanted $200.00 for them. Mr. Barnett stated that he told him he was not interested at that price, but that he might take a look.
Barnett indicated that he walked outside the grill and looked at the items in the trunk of the car, then went back inside the grill and cashed a check for $100.00. He stated that he offered $100.00 to the appellant for three used guitars, an amplifier, and two electric speakers.
Mr. Barnett indicated that he drove home that evening and moved these items, which he bought for $100.00, into his playroom. He stated that next morning he called the city detectives at the Montgomery Police Department and asked if they had any information on any missing properties, and upon being advised that they did not, he called a friend of his, one Butch Taylor, a deputy sheriff, and made the same inquiry. He stated that a Montgomery policeman and also Taylor indicated on Friday morning that they had no record of such missing properties, but the following Monday or Tuesday, he talked with his friend, Deputy Sheriff Taylor, who told him the Montgomery City Police had a missing report on several items, and he and Deputy Taylor loaded the items and carried them to the Montgomery Police Headquarters.
On cross-examination, Mr. Barnett stated that he was a used car dealer by occupation and that he had had several drinks on the night of September 13 before purchasing the items for $100.00 at the H & T Grill. He stated that he saw the two men come in between 10:30 and 11:00 p. m., and the purchase was made soon thereafter. He stated that he could not be positive of the identity of the appellant, but that he thought he was the same man. He stated that he had gotten the appellant’s name and description from the manager of the H & T Grill over the telephone. He stated that, when he was advised that the instruments were probably stolen, he called the Montgomery City Police Department and took the instruments to them.
Montgomery Police Detective G. E. Murphy testified that he received a report from Detective R. D. Mobley that some missing musical instruments were in a red vehicle parked at the Downtown Lounge on Jefferson Street, Montgomery, Alabama, that two men were driving the vehicle and it had an out-of-state license. Detective Murphy stated that he went to the Downtown Lounge that morning and saw a red automobile answering the description parked near the lounge with the doors open. He approached the vehicle and observed a man lying on the back seat asleep and a woman on the front seat asleep. He stated that he asked his partner to watch the two people in the car and he entered the lounge. He walked over to where he saw the appellant seated at a table with another male and two women, and they were having some drinks. Detective Murphy stated that he tapped the appellant on the shoulder, identified himself as a Montgomery police officer, and asked the appellant to come outside as he had a matter he wished to discuss with him.
Detective Murphy stated that the appellant hesitated and then suddenly, as he arose, whirled and pulled a knife. Detective Murphy stated he then disarmed the appellant and handcuffed him, then placed him under arrest for assault.
On cross-examination Detective Murphy indicated that the knife was a letter opener with sharpened nine inch blade. He stated that the appellant was advised of his Miranda. rights at the scene of the arrest, and that he was also advised of his Miranda rights a second time, which he signed, ad *403 mitting that he had received these, at Police Headquarters later that day. The appellant, without any threat, intimidation, coercion, or inducement of any kind, then gave a statement admitting his participation in the larceny.
On cross-examination Detective Murphy stated that the appellant had some drinks earlier in the morning, but at the time he gave his statement, about 11:10 a. m. at Police Headquarters, he did not appear to be under the influence of alcohol, or any other toxicant. He stated that the appellant appeared to be sober, that his speech was clear, and he answered in a coherent and responsible manner.
Appellant’s statement, State’s Exhibit Three, is as follows:

“Statement

“The following statement is taken from James Bruce Wheat, W/M Dob 10-11-49, Finley Avenue, Montgomery, Alabama. The statement concerns his possession of several instruments which he had in his possession, which he had taken from the Berea Church on Fleming Road.
“Me and a man named Wade Bordes, went over to the church about 9:30 last night (9-13-78), we went to the back door and I broke out the glass pane, reached in and opened the door, at, that time we went in the church and went to the front where the stuff is kept there we got the guitars and the amplifiers and took it out and put it in my car, in the back seat and the trunk. We left there and went to the place over on Mt. Meigs Road to try and sell the stuff, but they told me that he was not there, so we left there and went to the H & T Grill on High Street. Wade ran into a man that he knew and he told him that we had some stuff to sell, he said that he would buy the stuff from us for a $100.00. He gave us the money for the stuff and we gave him, two custom amps, one Peavy amp and head, and also three guitars. We helped him put the stuff in his car and then we left there and went to the Downtown Club.
“Q. Did you and another male, named Wade Bordes break into the Berea Church on Fleming Road?
“A. Yes, sir.
“Q. Did you and he take various equipment from the church and put it in your car?
“A. Yes, sir.
“Q. Did you and Wade Bordes take the equipment to the H & T Grill to sell and did you sell it?
“A. Yes sir.
“Q. Who did you sell the stuff to?
“A. I don’t know the guy’s name. I just know his face.
“Q. How much did he give you for the musical equipment that ya’ll had removed from the church?
“A. $100.00 in cash.
“The above statement is given by me of my own free-will. No threats or promises have been made to me and the above is true and correct to the best of my ability and knowledge.
“S/ James B. Wheat Date: 9-14-78
“Statement taken by:
G. E. Murphy (170)
Det. Division
11:10 AM”
Appellant’s motion to suppress and motion to exclude for failure to make out a prima facie case were overruled.
The appellant did not testify at trial, nor did he present any evidence in his behalf.
I
Count II, under which the jury found the appellant “guilty of grade larceny, as charged,” reads as follows, omitting formal parts (R. p. 101):
“COUNT II: The Grand Jury of said County further charge that, before the finding of this indictment, JAMES BRUCE WHEAT, whose name is to the Grand Jury otherwise unknown, feloni-ously took and carried away from a storehouse, warehouse, shop, office or church building, one Martin Guitar, a better de *404 scription of which is unknown to the Grand Jury, of the value of $750.00; one Gibson Guitar, a better description of which is unknown to the Grand Jury, of the value of $300.00; two amplifiers, a better description of which is unknown to the Grand Jury, of the value of $550.00 each; two speakers, a better description of which is unknown to the Grand Jury, of the value of $500.00 each, and three guitars, a better description of which is unknown to the Grand Jury, of the aggregate value of $100.00, all of the aggregate value of $100.00, the personal property of Berea Church,
“against the peace and dignity of the State of Alabama.”
To this indictment, the appellant filed a demurrer, challenging its legal sufficiency and calling attention to the fact that it avers the “aggregate value” of the missing items as being $100.00, when in fact the total of the items, as shown by other parts of the indictment, is $3450.00.
In Gary v. State, 18 Ala.App. 367, 92 So. 533, we find this statement:
“The rule heretofore followed and which we now reaffirm is:
“ ‘If the sense of an indictment is clear, technical exceptions thereto should not be favorably regarded, and verbal, inaccuracies or clerical errors which are explained and corrected by necessary intendment from other parts of the indictment, or errors of spelling not obscuring the sense, are not fatal.’ Couch v. State, 6 Ala.App. 43, 60 So. 539; Sanders v. State, 2 Ala. App. 13, 56 So. 69; Grant v. State, 55 Ala. 201; Holland v. State, 11 Ala.App. 134, 66 So. 126.”
We are of the opinion that the figure referred to by the appellant in his demurrer, and in his brief filed in this cause, was simply a clerical error, which is self-correcting when the individual clauses in the indictment are read. Since the indictment is clear, we are of the opinion that such, a mere clerical error, as above shown, was not sufficient to lead a person of common understanding who might read this indictment to be in doubt as to the intended charge. The trial court therefore correctly overruled this demurrer. Grant v. State, 55 Ala. 201; Henry v. State, 57 Ala.App. 383, 328 So.2d 634, and authorities cited.
II
Appellant asserts that Detectives Murphy and Gaines lacked sufficient information upon which to make a valid arrest of the appellant at the Downtown Lounge on Jefferson Street. We do not agree.
Recently, this Court, speaking through Judge DeCarlo, in Herrin v. State, Ala.Cr.App., 349 So.2d 103, cert. denied, Ala., 349 So.2d 110 (1977), set forth the criteria under which an investigative stop and seizure may be made. This Court followed the Herrin case in an opinion known as Goodman v. State, Ala.Cr.App., 356 So.2d 691, cert. denied, Ala., 356 So.2d 698.
It is clear from the evidence in this cause that the two Montgomery detectives, Murphy and Gaines, were acting upon information furnished to them from their fellow officer, Detective R. D. Mobley, concerning some missing guitars and other musical instruments reported as missing from Berea Church. The automobile and the appellant’s companion, Wayne Bordes, who was observed asleep on the rear seat, answered the description given to the investigating officers. Moreover, the two large guitars which were reported missing were observed by Detective Murphy as he approached appellant’s table in the lounge. Beyond question, these officers had the necessary information upon which to make an investigative stop of the appellant and his companion.
Moreover, the appellant whirled on the officer with a knife, requiring Detective Murphy to subdue him before effecting his arrest. Under the circumstances shown, the officers, Murphy and Gaines, clearly and properly made a lawful arrest and search of the appellant and his companion.
*405 III
The appellant asserts that his statement to the officers, given shortly after 11:00 a. m. on the morning of his arrest, was not voluntary. This contention is not supported by the record, as the record contains a proper Miranda and voluntariness predicate, each showing that the statement was given some two hours after his arrest and was made at Police Headquarters following proper advice as to the appellant’s constitutional rights. The trial court correctly admitted the appellant’s statement into evidence.
IV
We have examined the appellant’s other contentions of error concerning the circumstances of his arrest; the motion for a mistrial, which was properly handled by the trial court, Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967); Earley v. State, Ala.Cr.App., 358 So.2d 494, cert. denied, Ala., 358 So.2d 501 (1978), and cases cited; the charges which were given and refused, and find that the trial court properly ruled on each of the matters asserted in the brief. The refused charges were either properly refused under the evidence, or otherwise fairly and adequately covered by the trial court in its oral charge to which no exception was taken, or the several written charges given at the request of the appellant. § 12-16-13, Code of Alabama 1975; Ingram v. State, Ala.Cr.App. 356 So.2d 761 (1978).
We have carefully examined this record and find same to be free of error. The judgment is due to be and the same is hereby
AFFIRMED.
All the Judges concur.