TYSON, Judge.
Bernard Talley - was charged by indictment with escaping from the custody of S.A. Eiland, a lawful officer of the Montgomery Police Department, contrary to § 13A-10-33, Code of Alabama 1975 as amended.
The jury found the appellant “guilty as charged in the indictment”, and following a filing of a motion to invoke the Habitual Felony Offender Act, the appellant was found to have two prior felonies and was sentenced in this cause to 10 years’ imprisonment for the offense of third degree escape. The appellant’s motion for a judgment of acquittal and motion for new trial were overruled; hence, this appeal.
Judy Robbins testified that she was Court Administrator for the City of Montgomery, Alabama. She testified that a part of her duties is making up and maintaining custody of the records of all war *1301 rants that pass through the Municipal Court of the City of Montgomery. She was asked to define a capias warrant and her testimony is as follows: (R. 12-13).
“THE WITNESS: We issue capias warrants against Defendants who fail to appear in court on the original writ and issue a capias even though they appeared to pay the fine, if they were fined by the Judge.
“Q. (By Mr. Travis) Is a capias an arrest warrant?
“A. Yes, it is.
“Q. Does that empower an officer of the Montgomery City Police Department to go out and, in fact, arrest someone who has had a capias assigned against them?
“A. Yes, it does.
“Q. Now, if you would, would you tell us what source documents are?
“A. The source document is the original court record of the arrest. It is not the original arrest warrant. It is the document or the docket sheet or the traffic citation which shows that the Defendant failed to appear in Court or that he was fined and failed to pay all or part of his fine. The source document is what we use to issue the capias warrant on verification of cause and grounds to issue capias warrant or second arrest writ.
“Q. How many source documents, would you say, are presently pending there in the Municipal Court?
“A. Approximately twenty-five thousand.
“Q. Now, in essence, what you are saying is there are at the present time approximately twenty-five thousand source documents that could have a capias already typed up for them?
“A. Yes.”
The witness was further asked as to the source of the documents which brought about the capias warrants and her testimony is as follows: (R. 19).
“Q. (By Mr. Travis) Do your records indicate that source documents were, in fact, in existence in March of eighty-two?
“A. They do.
“Q. On Mr. Bernard Talley?
“A. Yes.
“Q. Do your source documents tell you court documents did exist March of eighty-two in regard to Mr. Bernard Talley?
“MR. BENO: Objection.
“THE COURT: Overruled.
“A. For the existence of capias warrants, they did exist.
“MR. TRAVIS: I believe that’s all at this time.
“THE COURT: Cross examination?”
Mrs. Robbins was.then asked as to how many warrants were outstanding against this appellant and she testified that there were three. She stated that the first two were for discharging firearms within the city limits and that the appellant failed to appear but was convicted and fined $25.00 and costs.
As to the third incident the original charge was for concealing his identity and the appellant did appear and was tried be.fore the municipal judge and found guilty and fined $25.00 and costs. These three charges were outstanding in March, 1982.
Montgomery Police Officer Stephen Ei-land testified that he had been with the department for some eight years as of March, 1982. He further testified that on March 3, 1982, his responsibility as a police investigator had been to interview witnesses and collect evidence. He testified that he examined the records in the capias warrant clerk’s office and found that there were three warrants outstanding against this appellant, Bernard Talley. (R. 29).
“Q. On March the third of eighty-two, when you had occasion to go to the capi-as warrant clerk’s office, you said you found three outstanding capiases?
“A. Yes, sir.
“Q. Do these three documents look familiar to you?
“A. (Witness examining documents.) Yes, sir.
“Q. How is it that they look familiar to you?
*1302 “A. I have seen them before.
“Q. When?
“A. On the day that I was checking for capiases and also when I was checking the information for the trial today.
“Q. Are these the three documents that you saw March third when you made the determination that there were, in fact, outstanding capiases existing on Bernard Talley?
“A. There were also additional paperwork, but it is not available at this time.
“Q. Pursuant to your discovery that there were, in fact, outstanding capiases on Mr. Talley, what did you do?
“A. I went to the location where the complainant told me that I could find him and got two uniformed officers to accompany me.”
Officer Eiland testified that he had received information that the appellant could be found at a residence located at 110 Mildred Street in the City of Montgomery, Alabama and that he went to this address accompanied by Officers Whitaker and Lamar on March 3, 1982. He stated the two police vehicles arrived almost simultaneously and the appellant, whom he recognized, was standing on the sidewalk in front of the residence. He stated that he then approached the appellant whom he recognized from a description given him by one Linda Evans. The other two officers were following. He stated that the cars were parked next to the curb. He asked the appellant for identification and the appellant replied that his name was Bernard Williams. Eiland told appellant that he had warrants for his arrest and that he was going to have to come with them. He instructed appellant to turn around and place his hands behind his back. He stated that as he was in the process of placing the appellant under arrest and handcuffing him, the appellant suddenly broke and ran. Officer Eiland and his fellow officers gave chase for several blocks but they were unable to catch Bernard Talley.
Montgomery Police Officer J.M. Whitaker testified that on March 3, 1982, about 7:00 p.m., he accompanied Investigator Stephen Eiland to 110 Mildred Street, Montgomery, Alabama. He testified that they were in uniform and upon arrival at the address in question, spotted a subject known to them as Bernard Talley. He stated that Officer Eiland recognized Talley and walked up to him and told him there were some unpaid capias warrants for which he was wanted at headquarters. He also told him that he needed to talk with him with reference to a burglary. Whitaker stated that Eiland placed appellant under arrest and told him to turn around and place his hands behind his back. As Officer Eiland grabbed the appellant’s left wrist, Talley suddenly broke away and began to run. The three officers then gave chase but were unable to catch Talley.
At the completion of the State’s evidence the appellant moved for a directed verdict of acquittal on several grounds. He stated that the officers lacked probable cause to arrest appellant since he was being arrested for a misdemeanor and they had no probable cause to arrest since there had been no misdemeanor committed in their presence. After hearing argument the trial court overruled this motion. The trial court, on motion of the appellant, did instruct the jury not to consider any evidence with reference to any burglary offense, that the charge against this appellant was simply one of escape from custody and to disregard any testimony of that kind. The jury was polled and the jurors indicated that they could follow the court’s instruction.
Bernice Whetstone testified that she lived at 110 Mildred Street, Montgomery, Alabama. She stated that her husband was working just outside the house on the porch on the date in question. His name is Timothy Whetstone. She stated that her brother, whose name is Bernard Williams, was also in front of the house. She stated that when the officers came she looked and her brother told her that the police had stopped and stated that they were talking to her husband and that she then saw her brother run and get away. She stated that the officers then questioned her and her *1303 husband but that her brother, Bernard Williams, did not return. She said she told the officers his last name was Williams. They asked her if'he also went by the name of Bernard Talley and that she said yes.
Officer Eiland was recalled and stated that his handcuffs were in the back on his belt and that he was in the process of attempting to get these when Bernard Talley broke free and ran. He stated that he pursued him for some three blocks or between 15 and 20 minutes and was unable to catch up with him. He stated that the third officer who was with them was named Officer Lamar.
Officer Whitaker was then recalled and testified that they pursued Bernard Talley on the date in question for approximately 15 minutes or for several blocks but were unable to catch up with him.
Bernard Talley took the stand and admitted that in 1971 he had a conviction for grand larceny and in 1974 had a conviction for escape. He stated that on the evening of March 3, 1982, he was at his sister’s residence on Mildred Street talking with his brother-in-law, when two police cars drove up. He said that he had just walked inside and saw the officers speak to his brother-in-law and then he walked outside and was asked who he was and he told the officers his name was Bernard Williams. He then stated that the blond haired officer (Eiland) asked him if his name was Bernard Talley and he denied that it was. He was then asked to go to the station. He told the officers that he did not want to go and he was then told to turn around and place his hands behind his back. (R. 73). He stated that he then broke and ran to get away from the officers. He stated that his sister’s name was Bernice Whetstone and that her husband was Timothy Whetstone.
Timothy Whetstone was called and testified relating the same events as the appellant.
I
The real issue on this appeal concerns whether or not Officer Eiland and his fellow officers had probable cause to arrest the appellant, Bernard Talley, on the evening of March 3, 1982 while he was standing just outside his sister’s home at 110 Mildred Street, Montgomery, Alabama.
We find the following discussion in Childress v. State, 455 So.2d 175 (Ala.Crim.App.1984) to be in point:
“This court in Kimbrough v. State, 352 So.2d 512 (Ala.Cr.App.), cert. denied, 352 So.2d 516 (Ala.1977), speaking through Judge Harris noted:
‘The United States Supreme Court held in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) that a police officer may in appropriate circumstances and in an appropriate manner approach a person for investigating possible criminal behavior even though there is no probable cause to arrest. Of course the police officer must be able to point out ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.’ “Moreover, in Herrin v. State, 349 So.2d 103 [Ala.Cr.App.] cert. denied, 349 So.2d 110 (Ala.1977), Judge DeCarlo, speaking for this court, stated:
“In Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), the court said:
‘... The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time... [Citations omitted].’
“Similarly, Judge Bowen, speaking for this court in Campbell v. State, 354 So.2d 325 (Ala.Cr.App.1978) indicated:
*1304 ‘While mere presence is never a sufficient basis for a finding of probable cause to arrest, presence when coupled with other circumstances may ripen suspicion into a reasonable belief capable of supporting a finding of probable cause.’ “The principles set forth in these opinions have now been codified in Title 15-5-30 and 15-5-31, Code of Alabama 1975 as amended. See also, Goodman v. State, 356 So.2d 691 (Ala.Cr.App.), cert. denied, 356 So.2d 698 (Ala.1978) and Wheat v. State, 372 So.2d 400 (Ala.Cr.App.1979).”
It is clear from the testimony of Officer Eiland and Officer Whitaker that they were aware that there were three outstanding capias warrants in the Municipal Clerk’s office and that they had checked to see if such were outstanding on the date in question. Moreover, Officer Eiland testified that the appellant was wanted for questioning with reference to a felony, namely, a burglary.
After confronting the appellant on the sidewalk in front of his sister’s home, the two officers confirmed, and it is not really contradicted by appellant’s testimony, that they advised him that he was wanted for questioning at police headquarters and that they were placing him under arrest in light of the three outstanding capias warrants. It was as the appellant was being arrested that he broke away from the officers and succeeded in escaping from them.
The indictment in this case charged third degree escape. This, of course, was a misdemeanor. However, in light of the testimony, it is clear to this court that the City of Montgomery, through the two officers, presented a prima facie case and that the appellant was in the process of being lawfully arrested when he broke free. There is no question but that the officers, under the authorities herein, had the authority to effect this arrest and the appellant did, in fact, escape from custody.
As noted in the very recent opinion of the United States Supreme Court in United States v. Hensley, — U.S. —, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), the officers do not have to have an immediate probable cause to arrest, provided they have a valid informant’s tip, and are aware that the party being questioned is “wanted”. This is precisely the situation with which Officer Eiland and Officer Whitaker were confronted in the case at bar.
Under the authorities herein stated, we are clear to the conclusion that there were sufficient articulable facts and circumstances testified to by the officers which gave rise to the necessary probable cause resulting in the arrest of the appellant on the charge here at issue. Butler v. State, 380 So.2d 381 (Ala.Crim.App.1980); Kemp v. State, 434 So.2d 298 (Ala.Crim.App.1983); Childress v. State, supra, and authorities herein cited.
II
The appellant argues that there was evidence of other distinct criminal acts which should not have been allowed into evidence. As herein noted, the trial court instructed the jurors to disregard any testimony with reference to any charge other than that of escape from custody. (R. 50-51). Moreover, the jurors were then polled following appellant’s motion, and each indicated, by raising their hand, that they would follow the court’s instructions. (R. 51).
In light of these instructions, it is clear that no error was presented by virtue of the reference to the appellant being a “burglary suspect”.
The appellant’s motion for a mistrial was therefore properly overruled. Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967). Retowsky v. State, 333 So.2d 193 (Ala.Crim.App.1976), and authorities therein cited.
We have carefully examined this record and find no error therein.
The judgment is due to be and the same is, hereby, affirmed.
AFFIRMED.
All the Judges concur.